■ JOHN PILGREEN, Appellant, v 91 FIFTH AVENUE CORPORATION, Respondent. CHRIS CALLIS, Individually and Doing Business as CHRIS CALLIS STUDIO, et al., Appellants, v 91 FIFTH AVENUE CORPORATION, Respondent. — Order and judgment (one paper), Supreme Court, New York County (Blyn, J.), entered December 7, 1981 in *Pilgreen v 91 Fifth Ave. Corp.*, and order and judgment (one paper; same court, same Justice), entered December 8, 1981 in *Callis v 91 Fifth Ave. Corp.*, modified, on the law, and, in the exercise of discretion, to deny the motion in each case to dismiss the first cause of action alleged in each complaint, and to grant plaintiffs' motion for consolidation and for preliminary injunctive relief on condition that the tenants maintain current payments of rent or use and occupancy, and otherwise affirmed, without costs or disbursements. Upon tenants' failure to comply with such condition, defendant may apply at Special Term to vacate the preliminary injunction herein granted. Plaintiffs claim entitlement to the protective features of the interim Loft Law (L 1980, ch 889, § 6) upon the basis of their residential use and occupancy of loft premises at 91 Fifth Avenue, New York, New York. Notwithstanding the language in their leases which, in *Pilgreen*, limited use and occupancy of the premises for a "photography studio" and, in *Callis*, for an "office & photo studio" and "for no other purpose" plaintiffs allege that the premises are actually occupied residentially and that the landlord knew and consented to such residential use and occupancy. The tenants also claim to have expended considerable sums on improvements to convert the lofts to such residential use. They brought these actions, seeking, *inter alia*, a declaration that under the provisions of the interim Loft Law (L 1980, ch 889, § 6), they were entitled to be offered a renewal lease for a term of at least one year at a monthly rental not to exceed 11% above the rent payable during the final month of their existing leases, and for an injunction enjoining the landlord from any action or proceeding to evict the tenants, or otherwise acting to disturb or interfere with their use and occupancy of the loft premises. Defendant, denying that it had any knowledge of, or that it consented to, such residential use, relies upon the limiting language contained in the leases and claims that none of the plaintiffs

was protected by the 1980 interim Loft Law. The statute, it is argued, was solely designed to protect joint living and working quarters for artists as defined in section 276 of the Multiple Dwelling Law, i.e., one "regularly engaged in the fine arts * * * so certified by the city department of cultural affairs and/or state council on the arts." Upon this basis, when plaintiffs moved for preliminary injunctive relief to enjoin defendant from interfering with their respective tenancies of the premises pending disposition of the action, defendant cross-moved, *inter alia,* to dismiss the complaint pursuant to CPLR 3211 (subd [a], pars 3, 7, 10). Although plaintiffs alternatively claim that, as photographers, they were artists, within the statutory definition, the documentary evidence adduced before Special Term unquestionably demonstrates that they had not been certified as such by the city Department of Cultural Affairs. Upon that finding, Special Term held that plaintiffs were not protected by the provisions of the interim Loft Law, concluding that section 6 of chapter 889 of the Laws of 1980 was to be read in conjunction with article 7-B of the Multiple Dwelling Law and, in particular section 276 thereof. We disagree. The 1980 statute was intended to have a far broader application than the limited scope ascribed to it by Special Term. The law was designed to affect a moratorium on evictions of loft tenants and to establish a procedure whereby such tenants were to be afforded a renewal for a term of not less than one year at a maximum rent increase of 11%. Thus, the legislative memorandum which accompanied the enactment took cognizance of the legislative purpose to "provide a moratorium on evictions of loft tenants who hold leases expiring subsequent to June 11, 1980, until a legislative solution can be found which strikes a fair balance between owners-tenants and assures that the tenants will be living in safe structures with a proper and suitable level of service for the loft space used for residential/commercial use." (McKinney's Session Laws of NY, 1981, p 2375.) Such a legislative solution has been effected by the recent enactment of a permanent Loft Law (L 1982, ch 349), the scope of which is not now before the court. Although the Legislature created a fixed term for the interim law, which expired on June 30, 1981, this does not render the appeals academic, as is suggested by respondent. The applicability of the interim loft provision to these tenants insofar as concerns their right to a renewal lease at an 11% increase may have a direct bearing upon any determination which may be made in fixing their base rent under the permanent Loft Law. Section 275 of the Multiple Dwelling Law, amended in 1977 (L 1977, ch 853), declared the legislative intent to permit the alteration of certain buildings so as to allow untenanted portions to accommodate "general residential use, thereby contributing to an alleviation of the housing shortage most severely affecting moderate and middle income families, and of accommodating joint living-work quarters for artists by making readily available space which is physically and economically suitable for use by persons regularly engaged in the arts." Overlooking the dual legislative purpose thus envisioned, Special Term concluded that plaintiffs sought the protection of the statute based solely upon their status as artists and their claim that the premises were used as joint living-work quarters. To the contrary, plaintiffs claim that their residence within the lofts was with the full knowledge and consent of the landlord so as to constitute "general residential use," within the contemplation of the statute. The extension of statutory protection to tenants who maintain residential use and occupancy of such lofts gives full effect to the underlying remedial nature of the legislation, which "should be liberally construed to accomplish its manifest purpose of halting the summary eviction of tenants residing in former commercial lofts." (*Gordon & Gordon v Madavin, Ltd.,* 108 Misc 2d 349, 351, affd 85 AD2d 937.) That plaintiffs are photographers, who allegedly

occupy their loft studios for residential use, and are not certified as artists by the New York City Department of Cultural Affairs is not dispositive (see *Dovman v Yahashi*, 109 Misc 2d 484). The crucial issue to be determined is whether or not they maintained residence within the lofts and whether, under the clear terms of section .6 of chapter 889 of the Laws of 1980, the defendant knew or had reason to know at the inception of the term that the tenant would occupy all or part of the loft for residential purposes, or, whether the owner accepted rent by or on behalf of a tenant who actually occupied all or part of the loft for such residential use, for a period of three successive months. These are essentially factual issues which cannot be finally resolved upon affidavits alone, but are more appropriately matters to be reserved to the trier of the facts. Upon this basis, we find that Special Term erred in dismissing the first cause of action for declaratory judgment and injunctive relief. In view of the fact that the parties have limited the appeal to so much of the order and judgment which dismissed the first cause of action, we need not pass upon the balance of the determination of Special Term which dismissed with leave to replead, the second cause of action in each complaint sounding in fraud, and which likewise dismissed the balance of each complaint, either on the merits or as premature. Since both actions raise common questions of law and fact, involving essentially identical lease provisions, we are in agreement that consolidation is appropriate under CPLR 602. Pending final disposition of the action, preliminary injunctive relief enjoining defendant from commencing any action or proceeding to terminate plaintiffs' tenancy and restraining defendant from acting to interfere with plaintiffs' use and occupancy of the subject loft premises is appropriate, conditioned upon plaintiffs maintaining current rent payments for use and occupancy of the premises. From the record, it sufficiently appears that the three-pronged standard has been satisfied as to warrant the exercise of discretion in imposing injunctive relief *pendente lite*, so as to maintain the *status quo*, provided, of course, that current obligations are met. Plaintiffs have established that there is a likelihood of ultimate success on the merits; that irreparable injury would result in the absence of preliminary injunctive relief; and that a balancing of the equities to effect substantial justice and to preserve the *status quo* warrants the grant of extraordinary relief (*Grant Co. v Srogi*, 52 NY2d 496; *Chrysler Corp. v Fedders Corp.*, 63 AD2d 567; *Albini v Solork Assoc.*, 37 AD2d 835). Concur — Silverman, Fein, Milonas and Kassal, JJ.

Markewich, J. P., dissents in part in a memorandum as follows: This case is illustrative of an ancient proverb.* Special Term faced the problem of relief sought by several plaintiffs caught between an emergency Loft Law (L 1980, ch 889, § 6), which had expired by its own terms (§ 8), and the present law (L 1982, ch 349), which had not yet gone into effect at the time suit commenced. The court therefore ruled against a grant of relief under the expired statute; no serious claim worthy of attention is made under the new statute. Indeed, were there any reliance on the new statute claimed, it would be vitiated as ex post facto. (See *People v Oliver*, 1 NY2d 152, 157-158.) To return to the 1980 statute which, by its own self-destruct mechanism, expired before relief was sought herein: "[t]he repealed [read: "expired"] statute could not be availed of, for in legal contemplation it no longer existed." (*People v Oliver, supra*, at p 159.) Nor is it to be considered that any general saving clause, as described in *People v Oliver (supra*, at pp 159-160), applied pursuant to either sections 93 or 94 of the General Construction Law. Certainly, the provisions of section 95 do not apply in the circumstances of a much *later* (1982) enactment of the new Loft Law so as to provide constructive continuity. In between, the relief afforded by either chapter would not have been available to plaintiffs, trapped in the limbo

---

* "One falls to the ground in trying to sit on two stools." (Rabelais.)

between the 1980 and 1982 laws. The original emergency Loft Law was specifically enacted as interim relief to alleviate what the Legislature envisioned as a time-limited problem. As often happens, that body guessed wrong and left a large hole of time between the two laws. The majority have given the time-limiting provisions of the old statute an equitable reading, obviously hoping thereby to avoid the law's clear and unmistakably intended expiration date. However, the "ancient English doctrine of construing a statute according to its equity has been disavowed and repudiated by the courts. This determination finds ready acceptance because the principle, in its broad sense, is completely out of harmony with the modern view of the functions of the legislature and the judiciary." (McCaffrey, Statutory Construction, § 4, p 8.) In the circumstances, Special Term quite correctly withheld the relief requested under the expired law. Affirmance to the extent indicated is called for. I agree with the majority, however, that the court should have granted the motion to consolidate the two actions involved in this appeal. Special Term, although denying the motion formally, did effectively consolidate the two by writing identical memorandum opinions in each case. There is no reason for the cases to continue with separate identities. Settle order.