OPINION OF THE COURT
Stephen G. Crane, J.
Motions No. 193 on the calendar of September 16, 1982, No. 118 on the calendar of October 12,1982, and No. 94 on the calendar of November 8, 1982, are consolidated and decided herein.
Plaintiff and defendant are parties to a lease dated August 10, 1978, for a term to expire on September 30, 1982. The rent for the last two years was $600 monthly. The lease provided that the tenant shall use and occupy the premises, the second floor at 5 West 20th Street, for a photo studio and for no other purpose. Further clauses required the tenant to avoid use or occupancy that would violate the certificate of occupancy; guaranteed the tenant’s quiet enjoyment upon his performing the tenant’s terms and conditions of the lease; provided that no representations except as found in the lease would be binding on the landlord or give any rights to the tenant; stipulated that landlord’s receipt of rent knowing of a breach of any covenant shall not be a waiver of any provision of the lease; and imposed on the tenant the landlord’s attorney’s fees incurred because of any default of the tenant.
On September 1, 1982 defendant served a notice to cure requiring plaintiff by September 17, 1982, to discontinue his residential or joint living-working use of the demised premises. He promptly commenced this action seeking a declaration that defendant had waived any breach due to his joint residential and professional use and that he is entitled to the protection of the new Loft Law that added article 7-C to the Multiple Dwelling Law effective June 21, 1982 (the Loft Law). He claimed damages, punitive and compensatory, for harassment and for fraud and his ad damnum asked for attorney’s fees. On September 9, 1982, plaintiff secured an order to show cause containing a stay *255 of efforts to enforce the notice to cure or to evict plaintiff. The stay has been continued pending determination of Motion No. 193 of September 16, 1982 by which plaintiff seeks an injunction pendente lite to like effect.
Before answering, defendant brought on Motion No. 118 of October 12, 1982, to dismiss the harassment and fraud causes of action for insufficiency and to strike the demand for attorney’s fees. Before that motion was submitted, plaintiff served as of right an amended complaint, verified October 6,1982. It made changes in the causes of action for damages for harassment and fraud, and it added a cause of action under section 234 of the Real Property Law on which to pin the claim for attorney’s fees.
Defendant next moved for a direction that plaintiff, pendente lite, pay use and occupancy, without prejudice, and for a dismissal of each cause of action of the amended complaint for insufficiency and of the first two causes on the claim that the new Loft Law is unconstitutional. The order to show cause bringing on this motion (No. 94 of Nov. 8,1982) ordered plaintiff to pay use and occupancy pending determination of the motion.
PROCEDURAL PROBLEMS
Defendant claims that service of an amended complaint should not circumvent the motion addressed to the sufficiency of the original complaint. Plaintiff argues that the amendment has cured the deficiencies claimed in defendant’s first motion. Moreover, plaintiff suggests that defendant’s second motion is mere afterthought constituting a belated attack on the first two causes of action which defendant ignored in its first motion. Since only one motion is allowed under CPLR 3211 (subd [a]) (CPLR 3211, subd [e]), plaintiff contends that defendant’s second motion is procedurally improper. Finally, neither party addresses the effect of the amendment on the already submitted motion for a preliminary injunction that had been brought under the original complaint.
For the reasons that follow, I hold that the motion for a preliminary injunction remains viable, the motion addressed to the sufficiency of the original complaint has been rendered moot, and the motion attacking the amended complaint is procedurally proper.
*256 A motion for a preliminary injunction may be made either (1) when a defendant threatens to do an act in violation of plaintiff’s rights respecting the subject of the action, or (2) in an action seeking a permanent injunction (CPLR 6301). Only in the latter situation is the plaintiff required to submit the complaint (Seplow v Century Operating Co., 56 AD2d 515) or at least a summons with notice stating the object of the action (.Fairfield Presidential Assoc. v Pollins, 85 AD2d 653). Where, as here, the preliminary injunction is sought not on the basis of a cause of action for a permanent injunction, the pleading need not be annexed to the motion (7A Weinstein-Korn-Miller, NY Civ Prac, par 6312.05). Consequently, the amendment of that pleading during the pendency of the motion, in a manner of no consequence to the application for a preliminary injunction, can have no effect on its consideration (cf. 12 Carmody-Wait 2d, NY Prac, § 78:100, p 215).
A motion addressed to the sufficiency of an original complaint may not be circumvented by the service of an amended complaint (3 Weinstein-Korn-Miller, NY Civ Prac, par 3025.07). The court may dismiss the original complaint if it finds the amended one sufficient or it can dismiss the motion addressed to the pleading that no longer exists (ibid.). Although Professor Siegel has expressed distaste for the latter approach (called “abatement” of the motion), he suggests that the court address the amended pleading (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:65, p 70). This approach is especially appropriate where defendant has obliged with a second CPLR 3211 (subd [a], par 7) motion attacking the amended complaint. And, the single-motion rule of CPLR 3211 (subd [e]) is not offended where, as here, the second motion raises the ground of CPLR 3211 (subd [a], par 7), because a motion on this ground may be made at any time (Siegel, op. cit., CPLR C321L55, p 59).
LOFT LAW
Among the vexing problems of our dynamic urban condition in New York City has been the nonjuris status of the leasehold interest exemplified by the controversy at bar. Tenants have been eager to take advantage of the hitherto cheap availability of loft space for commercial and *257 residential purposes. Landlords, perhaps competing in a declining market for commercial and manufacturing space, have been willing to conspire[1] with tenants to satisfy the needs of both — but “outside the pale of the law.” (Corris v 129 Front Co., 85 AD2d 176, 179.) Tenants would rent raw space and invest significant sums in fixtures, such as bathrooms and kitchens, to make the space livable, or purchase these emoluments from prior tenants. Yet, these arrangements offended the public interest in safety, health, zoning and commerce. Since commercial and manufacturing premises are not compatible with residential needs, and as demands shifted from commercial to residential space, numerous tensions arose between lessors and lessees under these arrangements. Services required for living, such as elevators, electricity, heat and fire prevention became the focal point for litigation.
The Legislature enacted chapter 889 of the Laws of 1980 as an emergency measure. To afford the opportunity for a longer range adjustment between owners and tenants and subject to a minimum level of safety, this legislation created a moratorium on eviction until its expiration on June 30, 1981. (See McKinney’s Session Laws of NY, 1981, pp 2374-2375.) A more enduring enactment in chapter 349 of the Laws of 1982 (the Loft Law) did not become effective until June 21,1982.[2] This affords protection to residents of so-called “interim multiple dwellings”. This term is defined, as pertinent hereto, as a building previously used for commercial or manufacturing purposes that was occupied since April 1, 1980 and on December 1, 1981 as the residences of three or more families. The building must be in an area that is zoned residential or, by minor modification or administrative certification, that will permit residential use. (Multiple Dwelling Law, § 281, subd 2.)[3]
*258 The second cause of action of the verified amended complaint adequately pleads the application of this Loft Law to the demised premises. Defendant is in error when it argues that only artists certified by the City Department of Cultural Affairs under section 276 of the Multiple Dwelling Law are entitled to the benefit of the new Loft Law. This was rejected in Pilgreen and Callis (supra), the Appellate Division noting that the tenants there, like plaintiff at bar, were photographers not certified as artists. Defendant finds further fault with the second cause of action in that plaintiff has not established that three families lived in the building during the relevant period and that residential use could be permitted by administrative certification. These matters present questions of fact and cannot be resolved on the face of the pleading. Defendant can derive no comfort from Justice Glen’s denial of the tenant’s application for summary judgment on the issue of interim multiple dwelling in 129 Front Co. v Arctander (NYLJ, Oct. 20, 1982, p 6, col 3). She denied summary judgment without prejudice to renewal; she did not dismiss the tenant’s claim that the building was an interim multiple dwelling.
CONSTITUTIONALITY OF THE LOFT LAW
Defendant argues that the Loft Law is unconstitutional “since it denies the landlord the right to collect rent unless interim multiple dwelling status is conceded.” More precisely, defendant’s memorandum of law describes the due process problem this way: “The scenario played out in this action is one which, by now, has become all too familiar to the courts. The tenant commences an action seeking a declaration that the building in which he is a tenant is an interim multiple dwelling. He couples his action with an order to show cause which contains a stay enjoining the landlord from evicting the tenant. The tenant then stops paying rent, and the landlord is helpless to do anything about it.” If I perceive this argument accurately, defendant is not really attacking the Loft Law. Rather, it is complain *259 ing about the way in which the injunctive powers of the court are used. The Loft Law itself allows a suit to collect rent by a landlord of an interim multiple dwelling. (Multiple Dwelling Law, § 285, subd 1.) Defendant, who is challenging plaintiff’s claim of “interim multiple dwelling” status, has not even commenced an action to evict plaintiff and to collect rent arrears. It is the plight of such a landlord that was the subject of Justice Glen’s remark that the Loft Law has left a gap. Even so, she recognized an escape hatch for that landlord — to cut off again the essential services directed in a companion action conditionally upon payment of rent and arrears. Justice Glen did not suggest there was a constitutional infirmity in the Loft Law. Furthermore, the gap she perceived in the Loft Law concerned a landlord of a multiple dwelling who is blocked from maintaining a dispossess proceeding by the rule of Lipkis v Pikus (99 Misc 2d 518, affd 72 AD2d 697) and Mandel v Pitkowsky (102 Misc 2d 478, affd 76 AD2d 807).[4] If defendant at bar is correct on the merits, its building is not a multiple dwelling and its summary proceeding would not be barred by sections 302 and 325 of the Multiple Dwelling Law. The foregoing indicates that defendant’s constitutional attack on the Loft Law is both theoretical and premature.
There is really no occasion in this case to review the constitutionality of the Loft Law.[5] The helplessness defendant feels emanates not from that legislation at all. *260 Rather, defendant at bar is actually complaining about the manner in which equity adjusts the interests of the parties to these controversies. On the one hand we are taught by Corris v 129 Front Co. (85 AD2d 176, supra) that a landlord may not resort to a mandatory injunction to compel payment of rent or use and occupancy. On the other hand, a landlord’s interest may be protected by conditioning injunctive relief in favor of tenants upon their payment of rent. (Corris v 129 Front Co., supra [where tenants asked to enjoin diminution of services].) An additional condition can preserve a landlord’s legitimate legal position; provision can be made that acceptance of rent is without prejudice to that position. This will satisfy defendant’s qualms of helplessness and render inapposite any questions of the constitutionality of the Loft Law.
Obviously, the court has found sufficient the heart of the amended complaint. Therefore, the branch of defendant’s motion addressed to the second cause of action is denied.
INJUNCTIVE RELIEF
As already mentioned, in order to preserve plaintiff’s right to cure should he be in error regarding his joint living-working use of the premises, a Yellowstone injunction is required. (First Nat. Stores v Yellowstone Shopping Center, 21 NY2d 630.) This case is distinguishable from Childress v Lipkis (72 AD2d 724). There, the premises were used exclusively for living. Any “cure” was possible only by moving out. The question of propriety of that use could be tested adequately in the dispossess proceeding. By contrast, if plaintiff is wrong, he can cure without vacating the premises. He would simply discontinue his residential use and continue his photography studio. To protect that valuable opportunity, the injunction is necessary. (See Cearley v Haddad Corp., NYLJ, Feb. 16, 1983, p 11, col 3 [Gammerman, J.].)
No injunctive relief is proper in favor of defendant, however, to compel payment of use and occupancy pendente lite. This can only be accomplished as a condition to the *261 grant of injunctive relief to plaintiff. (Corris v 129 Front Co., supra.)
WAIVER
The first cause of action advances the theory that defendant has waived any breach of the literal language of the lease restricting residential use of the premises. This waiver is alleged to arise not merely from a supine acquiescence or acceptance of rent in the knowledge that plaintiff was violating the lease. Plaintiff alleges a far more active waiver through defendant’s full knowledge and participation in the breach.
Defendant resorts to the nonwaiver clause of the lease and argues that it could never waive the right to evict for a violation that transcends the lease and flouts the zoning resolution, citing Rasch, New York Landlord & Tenant, Summary Proceedings (2d ed; § 449). It is accurate to say that a landlord may waive a default by accepting rent with knowledge of its existence. (Atkin’s Waste Materials v May, 34 NY2d 422, 427.) But, a no-waiver clause in the lease will preserve the landlord’s right to react to the violation while still accepting rent with knowledge thereof. (Pollack v Green Constr. Corp., 40 AD2d 996, affd 32 NY2d 720; but see Rasch, op. cit., § 738.) Yet, a no-waiver clause has been found inapplicable to a “waiver by open possession * * * [T]he acceptance of rent with knowledge of a subletting constitutes a waiver of the right to terminate the tenancy for breach of the condition against such subletting” (Sagson Co. v Weiss, 83 Misc 2d 806, 807 [App Term, 1st Dept]).
In the case at bar, it is impossible to rule as a matter of law that waiver did not occur. Despite the no-waiver clause, defendant’s alleged instigation and participation in the offending condition from the inception of the lease is so pervasive and active that it may be estopped from relying on the no-waiver clause. (Cf. Rose v Spa Realty Assoc., 42 NY2d 338, 343-344.) Furthermore, it cannot be ascertained that the nature of the violation of the zoning resolution is so serious as to prevent the defendant, for reasons of public policy, from waiving. After all, the new Loft Law contains a procedure for legalizing such occupancy in conformity with the zoning resolution.
*262 HARASSMENT OR RETALIATION
The third cause of action is duplicitous. First, it alleges that defendant’s transmittal of a “Notice to Vacate [sic]”[6] was in retaliation for his filing an application under the Loft Law. Next, plaintiff alleges that defendant’s actions have interfered with his peace and quiet use and occupancy with an intent to cause plaintiff to vacate. This, he Says, amounts to harassment under section 235-d of the Real Property Law for which he seeks compensatory and punitive damages. Defendant attacks the sufficiency of this cause and seeks to strike the request for punitive damages under CPLR 3024 (subd [b]) (scandalous or prejudicial matter unnecessarily inserted).
In Callis v 91 Fifth Ave. Corp. (NYLJ, Nov. 25, 1981, p 11, col 3, revd on other grounds 91 AD2d 565) Justice Blyn, at Special Term, dismissed a cause of action for retaliatory eviction under section 223-b of the Real Property Law because no evictions had yet eventuated. The Appellate Division did not review this disposition. Section 223-b affords a tenant served with a notice to quit a cause of action where such service was in retaliation for actions by the tenant in good faith, inter alia, to secure rights under any law of the State of New York having an objective of regulating premises for dwelling purposes. For purposes of analysis, it will be assumed that the Loft Law is one of these statutes. Nothing in this section requires a ripened eviction before retaliation becomes actionable. Nevertheless, it does require the landlord to serve a notice to quit. Furthermore, section 223-b creates a presumption of retaliation when the landlord, inter alia, serves a notice to quit within six months after the tenant commences administrative proceedings under the Loft Law; but this presumption is unavailable in an action or proceeding based on tenant’s violation of the terms of the lease.
Clearly, the notice to cure served in the case at bar was the first step in such a proceeding and was in full compliance with the literal wording of the lease. Whether this *263 notice to cure is the equivalent of the notice to quit under section 223-b of the Real Property Law need not be resolved since the statute does not apply where the tenancy is being terminated pursuant to the terms of the lease (Real Property Law, § 223-b, subd 6).
Besides, the third cause of action does not really invoke section 223-b at all. It relies expressly on section 235-d of the Real Property Law. Yet that section, applicable to any building used for manufacturing or warehouse purposes, provides that it shall constitute harassment for the landlord to deprive or interrupt certain physical services with the intent to cause the tenant to vacate. The prohibited conduct does not embrace the landlord’s attempt to enforce its legal rights under the literal wording of the lease. Indeed, subdivision 2 of section 235-d expressly excludes from the concept of harassment “The lawful termination of a tenancy or lawful refusal to renew or extend a written lease”.
Finally, punitive damages require pleading and proof of malice, willfulness, or other aggravating circumstances (14 NY Jur, Damages, §§ 179, 187). It cannot be said as a matter of law that punitive damages would be unavailable if the substantive cause of action for retaliation or harassment were proven (see, e.g., I.H.P. Corp. v 210 Cent. Park South Corp., 16 AD2d 461, affd 12 NY2d 329). Consequently, and without reaching the scandalous or prejudicial nature of these allegations, it cannot be said that they were unnecessarily inserted. Accordingly, they would not be subject to deletion pursuant to CPLR 3024 (subd [b]). (3 Weinstein-Korn-Miller, NY Civ Prac, par 3024.10.)
Nevertheless, there is no separate, substantive cause of action for punitive damages (Steinberg v Monasch, 85 AD2d 403, 406; M.S.R. Assoc. v Consolidated Mut. Ins. Co., 58 AD2d 858). They are only recoverable as an incident to recovery on the underlying cause of action (14 NY Jur, Damages, § 178). In view of the insufficiency of the third cause of action, the allegations supporting punitive damages also fall.
FRAUD
In his fourth cause of action plaintiff alleges that defen *264 dant falsely represented at the commencement of his tenancy that he would be permitted to reside in the loft. He says defendant knew the representations were false; plaintiff relied thereon by spending money to convert the space to residential use.
Defendant attacks this pleading for insufficiency and lack of particularization under CPLR 3016 (subd [b]). If I presume that defendant has stated the circumstances of the alleged fraud in as great a detail as they will lend themselves, then he has no cause of action for fraud. His claim simply is that when he commenced his tenancy defendant’s agents told him he could reside in the space. This is a knowing falsehood on which he relied.
To state a sufficient claim for fraud, a plaintiff must allege a defendant’s false representation of a material fact made with knowledge of its falsity and with an intent that the plaintiff rely thereon. The plaintiff must in fact be ignorant of the falsity and must rely to his detriment on the representation. This must be the cause of his damage. (Reno v Bull, 226 NY 546, 550; Brown v Lockwood, 76 AD2d 721, 730; 24 NY Jur, Fraud and Deceit, §§ 14, 160, 161, 169.)
As a matter of law the fourth cause of action is deficient. Plaintiff fails to allege his ignorance of the false representation; nor could he very well do so. After all, he signed a lease that clearly stated the contrary.[7] He could not, therefore, have relied to his detriment on the false representation in making his investment (24 NY Jur, Fraud and Deceit, § 169) and the alleged fraud was not the cause of his damages, if any.[8] Besides, it remains to be determined whether the representation was false. If plaintiff ultimately prevails under the Loft Law, the representation that he would be permitted to reside there will prove accurate.
*265 attorney’s FEES
The final cause of action relies on section 234 of the Real Property Law: “Whenever a lease of residential property shall provide that in any action or summary proceeding the landlord may recover attorneys’ fees and/or expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease * * * there shall be implied in such lease a covenant by the landlord to pay to the tenant the reasonable attorneys’ fees and/or expenses incurred by the tenant as the result of the failure of the landlord to perform any covenant or agreement on its part to be performed under the lease”.
Defendant argues that the lease at bar is not a lease of residential property. The Real Property Law fails to define “residential property”. Clearly, the lease in form is for commercial property; but to say that it is not a lease of residential property assumes the result under the Loft Law. If it turns out to be a residential occupancy in whole or in part, then the existence of a clause in favor of the landlord for attorney’s fees would trigger the plaintiff’s right to invoke section 234 of the Real Property Law.
That right, however, depends on expenses incurred by the tenant resulting from the landlord’s failure to perform any covenant or agreement. In the action at bar plaintiff rests no claim on any covenant of the lease. His lawsuit was stimulated by the exercise of the landlord’s contractual right to serve a notice to cure. Plaintiff would equate that right with an interference with his quiet enjoyment in breach of the landlord’s covenant. The covenant of quiet enjoyment in a lease simply guarantees a tenant’s lawful possession against competing claims of others. For its breach an eviction, actual or constructive, is required. Fear of eviction is not enough. (Rasch, New York Landlord & Tenant, Summary Proceedings [2d ed], §§ 890, 893; 33 NY Jur, Landlord and Tenant, § 161.) The covenant does not guarantee unlawful possession nor vitiate rights of the landlord to enforce tenant’s obligations under the lease.
Therefore, since plaintiff is not even alleging the breach of the landlord’s covenant of quiet enjoyment or any other agreement under the lease, his rights under section 234 of the Real Property Law, if any, do not come into play.
*266 To summarize: Motion No. 193 of September 16,1982, is granted and the defendant is stayed during the pendency of the action from taking any steps to evict the plaintiff, and the running of the time under the notice to cure is meanwhile tolled, all on condition that plaintiff post an appropriate undertaking in an amount to be fixed on settlement of the order herein and on further condition that he pay current use and occupancy and any arrears at the latest rate set forth in the lease to be accepted by defendant without prejudice (a) to its claims that the premises are not an interim multiple dwelling and that the Loft Law does not apply, (b) to any other defense in this lawsuit and (c) to any claim for rent or use and occupancy in any greater amount. Should plaintiff violate this condition, defendant may move on two days’ notice to plaintiff to vacate the injunction. The plaintiff shall notice this case for trial within 30 days after service of the answer.
Motion No. 118 of October 12, 1982, is denied as academic in view of the amendment of the complaint and the disposition of the companion motions.
Motion No. 94 of November 8, 1982, is granted to the extent of dismissing the third, fourth and fifth causes of action of the amended verified complaint and otherwise denied. The complaint is severed accordingly. The defendant shall be afforded 20 days from the date of service of a copy of the order to be entered hereon with notice of entry within which to serve its answer to the remaining portions of the amended complaint.
The direction in my order to show cause dated October 26, 1982, that plaintiff pay use and occupancy is vacated.

. That is not to say that some tenants have not deceived their landlords and converted space for living purposes without the landlords’ knowledge or tacit approval.

. This gap between June 30,1981 and June 21, 1982, so important in Pilgreen v 91 Fifth Ave. Corp. and Callis v 91 Fifth Ave. Corp. (91 AD2d 565), that Justice Markewich dissented solely over this hiatus, is irrelevant in the case at bar. Here, plaintiff relies exclusively on the new Loft Law, article 7-C of the Multiple Dwelling Law.

. Defendant’s position that the Southeast Chelsea Zone in which 5 West 20th Street is located (whether it be M1-6M or C6-4M) is not capable of administrative certification *258 for residential use is somewhat undermined by a memorandum helpfully supplied by its attorney labeled “Office of Loft Enforcement Memorandum.” This memorandum indeed suggests the applicability of the Loft Law to this very building included within the map of the small area set forth in the memorandum.

. By contrast to the case at bar, the landlord in Lipkis v Pikus (99 Misc 2d 518, affd 72 AD2d 697) collaborated with his tenants in devoting the premises to joint living-working (the leases to the contrary notwithstanding) and the owner in Mandel v Pitkowsky (102 Misc 2d 478, affd 76 AD2d 807) had made preliminary efforts to obtain a certificate of occupancy to legitimize residential use. Eli Haddad Corp. vigorously denies knowledge of or intention to convert to residential use.

. There is a strong presumption that legislative enactments are constitutional. To overcome this presumption, unconstitutionality must be demonstrated beyond a reasonable doubt. (Nettleton Co. v Diamond, 27 NY2d 182, 193; People v Pagnotta, 25 NY2d 333, 337; People v Pace, 111 Misc 2d 488; People v Darry P., 96 Misc 2d 12, 16; People v Bakolas, 113 Misc 2d 832.) Particularly, courts at nisi prius should avoid, except in rare cases, declaring acts of the Legislature unconstitutional. (National Psychological Assn. for Psychoanalysis v University of State of N. Y., 18 Misc 2d 722, 725-726, affd 10 AD2d 688, affd 8 NY2d 197, app dsmd 365 US 298; People v Darcy, 113 Misc 2d 580; People v Hedges, 112 Misc 2d 632; McKinney’s Cons Laws of NY, Book 1, Statutes, § 150; 8 NY Jur, Constitutional Law, §§ 44, 48.)

. The third cause of action, by incorporating the first seven paragraphs of the amended complaint, makes clear that the plaintiff is referring to the notice to cure when he mentions defendant’s transmittal of a notice to vacate.

. Moreover, that lease disclaimed any representations not expressly set forth, thereby merging all understandings and rights therein. Plaintiff does not attempt to set aside the lease and that general disclaimer of other representations.

. It is difficult to say he has suffered any damage until he has been evicted and lost his leasehold and investment.