MAPAMA CORPORATION, Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF CULTURAL AFFAIRS, Henry Geldzahler, Commissioner of the New York City Department of Cultural Affairs, City of New York, Patricia Lee Stotter, and Robert W. Newmann, Defendants.

No. 83 Civ. 1010.

United States District Court,
S.D. New York.

Aug. 30, 1984.

Morris, Graham, Stephens & McMorrow by Mordechai I. Lipkis, Jericho, N.Y., for plaintiff.

Frederick A.O. Schwarz, Jr., Corp. Counsel by Howard S. Weiss, New York City, for N.Y. City defendants.

Simpson, Thatcher & Bartlett by John J. Kenney, New York City, for defendants Stotter and Newmann.

## OPINION

MOTLEY, Chief Judge.

Plaintiff, Mapama Corporation, is the owner of a building in an area of Manhattan known as SOHO. Defendants, Patricia L. Stotter and Robert W. Newmann are residents of two units in Mapama's building. Defendants New York City Department of Cultural Affairs and its Commissioner are responsible for certifying artists pursuant to New York's Multiple Dwelling Law ("MDL") Article 7–B, § 276 and New York City Zoning Resolution §§ 12–10, 42–01.

Mapama has brought this action under 42 U.S.C. § 1983 and seeks declaratory and unjunctive relief. It claims that by "denying plaintiff notice of the applications by [Stotter and Newmann] for certification as artists, and further denying plaintiff any opportunity to contest or be heard with regard to said applications," the city "affected plaintiff's property rights seriously and adversely" without due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States. Mapama alleges that certification of Stotter and Newman as artists triggered the application of MDL Article 7–C, §§ 280–287, to its building. Mapama also alleges that Stotter and Newmann both fraudulently obtained their certification.[1]

The New York legislature enacted MDL Article 7–C, the so-called Loft Law, in 1982 on the basis of its findings that a "serious public emergency" existed which was created by the increasing resort of the population of large cities such as New York to the conversion of commercial loft space into residential use. Much of this conversion was being done without compliance with

---

**1.** This is not the first time Mapama has attempted to evict Stotter and Newman. One was a holdover petition which was dismissed on the ground that the building was a "de facto" multiple dwelling and Mapama had no certificate of occupancy for it. *Mapama Corp. v. Ruffer, et al.,* (Civil Ct., N.Y. Co., Index Nos. 62894, 62895, 117059, June 4, 1982). Apparently another holdover was filed and also was dismissed. Mapama apparently also has brought suit against Newman for $400,000 for trespassing on the roof of the building. After losing the holdovers, on July 20, 1982, Mapama then served on Newmann a notice to cure alleged lease violations and sought injunctive relief. The Supreme Court for the State of New York, New York County (Bruce McM. Wright, J.) denied injunctive relief and the Appellate Division affirmed. In doing so, the court noted

The fact that the Notice to Cure was served on the tenant so soon on the heels of the landlord's defeat in his holdover proceeding is not without significance. At the very least, it raises serious questions as to whether or not this was but another tactic employed by the landlord to clear the building, as claimed by the tenant. Additionally, the fact that Civil Court had recently determined that this building was a "de facto multiple dwelling," subject to the code compliance requirements imposed upon a landlord by the new "Loft Law" ... renders suspect the landlord's belated contentions....

*Newmann v. Mapama Corp.,* 96 A.D.2d 793, 446 N.Y.S.2d 331, 333 (1st Dep't 1983). Mapama commenced this federal action in February, 1983.

building codes and laws or minimum standards of health, safety, and fire protection. The Legislature also recognized that because of the "acute shortage of housing," forcing tenants in such dwellings to relocate would cause them to "suffer a great hardship" and that the uncertain status of such tenancies had created burdensome legal disputes between landlords and tenants. *See* MDL Article 7–C, § 280. The Loft Law was designed to legalize certain of those residences, to bring them up to safe residential standards, and to establish a system whereby rents would be regulated and adjusted to help defray the costs of the improvements. *Id.*

Pursuant to MDL Article 7–C, § 284(1)(i), owners of buildings covered by MDL Article 7–C are required to make whatever structural alterations in the building are necessary to comply with safety and fire protection standards set forth in MDL Article 7–B and ultimately to obtain residential certificates of occupancy. In addition, pursuant to MDL Article 7–C, § 286, residential units are subject to regulated rent and their tenants are provided certain protections from eviction. These obligations and restraints on the use of its property are the specific ways in which Mapama alleges in its complaint that its property rights are impaired. *See* Complaint ¶¶ 22–27.

The defendants have moved for summary judgment dismissing the complaint on the ground that Mapama's allegations fail to state a claim under § 1983.[2] Determination of the motion essentially requires the interpretation of various laws and regulations and the material facts are not in dispute. The crux of Mapama's claim is that coverage by Article 7–C deprives it of certain property rights and that certification of Stotter and Newmann as artists caused its building to be covered by Article 7–C. Therefore, Mapama claims, since it has a property interest affected by the certification, it has a due process right to

notice and an opportunity to be heard during the certification process.

The fact is, however, that certification is irrelevant to coverage of a building by Article 7–C. The owner's obligations and tenant's protections which are contained in Article 7–C and about which Mapama complains are applied to "interim multiple dwellings." An interim multiple dwelling is defined in MDL Article 7–C, § 281, which provides in pertinent part:

**§ 281. Definition of "interim multiple dwelling"**

1. Except as provided in subdivision two of this section, the term "interim multiple dwelling" means any building or structure or portion thereof located in a city of more than one million persons which (i) at any time was occupied for manufacturing, commercial, or warehouse purposes; and (ii) lacks a certificate of compliance or occupancy pursuant to section three hundred one of this chapter; and (iii) on December first, nineteen hundred eighty-one was occupied for residential purposes since April first, nineteen hundred eighty as the residence or home of any three or more families living independently of one another.

2. Notwithstanding the definition set forth in subdivision one of this section, the term "interim multiple dwelling" includes only (i) buildings, structures or portions thereof located in a geographical area in which the local zoning resolution permits residential use as of right, or by minor modification or administrative certification of a local planning agency, (ii) buildings or structures which are not owned by a municipality, (iii) buildings, structures or portions thereof within an area designated by the local zoning resolution as a study area for possible rezoning to permit residential use, or (iv) buildings, structures or portions thereof which may be converted to residential use pursuant to a special permit granted by a local planning agency....

---

**2.** In response to the motion, Mapama failed to submit a memorandum of law in violation of the local rules of this court which in itself is

"sufficient cause for ... the granting of the motion by default." Local Civil Rule 3(b).

Nowhere is certification of an occupant as an artist mentioned as a precondition to coverage by that provision.

Pursuant to MDL Article 7–C, § 282, a Loft Board was established to administer the new Loft Law in New York City. The regulations promulgated by that Loft Board explicitly state:

> The non-artist status of the current occupant shall not be the basis for exemption from Article 7–C coverage including the legalization requirements of Section 284(1).

Coverage Regulations § E(3). In express terms, then, the Loft Board's regulations provide that the question of whether or not an occupant is a certified artist has no bearing on the coverage as long as the statutory criteria quoted above are satisfied.[3]

This fact was recognized in *Fierstein v. Mullan*, N.Y.L.J., October 25, 1983, p. 7 (Civil Ct., N.Y.Co.) (Glen, J.) where the court held that if a building satisfied the statutory criteria for an interim multiple dwelling, it was subject to the Loft Law despite the non-certification of one of the three occupants as artists. *See also Taylor v. Eli Haddad Corp.*, 118 Misc.2d 253, 460 N.Y.S.2d 886, 891 (Sup.Ct.N.Y.Co. 1983).

■ The only conclusion that can be reached is that, by the plain language of the laws and regulations governing coverage of a building by MDL Article 7–C, certification of an occupant as an artist is wholly unrelated to that law's application. Indeed, aside from making its bald asser-

tions, Mapama has pointed to nothing in the laws and regulations to the contrary. Mapama can claim no Due Process right to notice and an opportunity to be heard in the certification process, therefore, because the alleged impairment of its property interests resulting from coverage by MDL Article 7–C are not triggered by certification. Mapama's complaint, therefore, fails to state a claim under 42 U.S.C. § 1983. *Paul v. Davis*, 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1164–1165, 47 L.Ed.2d 405 (1976).

Mapama contends in its attorney's affidavit that certification as an artist is relevant to the requirement that, as the last step in the legalization process of bringing the dwelling into building code compliance, the owner must obtain a residential certificate of occupancy. MDL Article 7–C, § 284(1)(i)(D). Apparently, a residential certificate of occupancy generally can be issued for units in the SOHO area only when the occupants are certified artists. *Fierstein v. Mullan, supra.* This argument, however, raises matters outside of the complaint, the thrust of which is that the owner obligations and tenant protections of MDL Article 7–C are made applicable to a building as a result of artist certification of the occupants. As is manifestly clear, artist certification is totally irrelevant to the application of MDL Article 7–C and to the consequent impact on Mapama's property interests alleged in this complaint.[4]

■ For the foregoing reasons, Mapama's complaint is dismissed for failure to state a claim under 42 U.S.C. § 1983. Any

---

**3.** Thus, contrary to Mapama's contention, even if Stotter and Newmann were not certified or were improperly certified, it could not evict them and relet to commercial tenants and would still have to make the improvements mandated by MDL Article 7–C.

**4.** The court in *Fierstein* directly addressed the issue of coverage by the Loft Law, certification of occupants as artists, and the final requirement of obtaining a residential certificate of occupancy.

Of course, as discussed above, before a building can be granted its 7–B Certificate of Occupancy, all units must be occupied in accord-

ance with the then applicable zoning regulation [which requires certification of occupants of dwellings in SOHO as artists]. The landlord may also have grounds to bring on proceedings against an occupant who illegally occupies her or his space. The question of [interim multiple dwelling] status and ultimate compliance with the MDL are, however, entirely distinct issues; the purpose of the Loft Law is, after all, to bring non-complying loft buildings which otherwise meet the criteria of Section 281(2) into compliance within the specified time period.
*Fierstein v. Mullan, supra.*

other claims in the complaint relating to alleged fraud on the part of Stotter and Newman are, if anything, claims arising out of state law. Absent a valid federal claim in a non-diversity action such as this, the court cannot exercise its pendent jurisdiction as to the state claims and they must be dismissed as well. *Zerman v. Jacobs,* 510 F.Supp. 132, 136 (S.D.N.Y.1981), *aff'd,* 672 F.2d 901 (2d Cir.1981). The complaint should be dismissed in its entirety.