In re VANTAGE PETROLEUM
CORP., Debtor.

No. 882–81962–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Dec. 18, 1985.

Harvis & Zeichner, New York City by Nathan Schwed, of counsel, for trustee.

Arnold P. Azarow, Westbury, N.Y. by Susan Piskiel, of counsel, for A. Ierardi and P. Ierardi.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

This matter came to be heard upon a motion and cross motion for summary judgment in this adversary proceeding. The trustee of the debtor's chapter 11 bankruptcy estate seeks to evict the Ierardis from their sub-tenancy of the debtor's car wash. The court finds that the Ierardis have complied with the terms of the lease between the parties, and accordingly, the trustee's complaint is hereby dismissed.

## FACTS

1. On December 2, 1981, debtor and the Ierardis entered into a lease for a car wash in East Meadow, New York.

2. Paragraph 10 of the lease requires the Ierardis to pay one half of the real property tax for the premises.

3. From August 2, 1982 through January 7, 1985 debtor forwarded no tax bills to the Ierardis and the Ierardis paid no property taxes.

4. On January 7, 1985, the debtor requested payment of all accumulated taxes within fifteen days.

5. On January 22, 1985 the Ierardis sent a letter to the trustee requesting copies of the tax bills and a copy of their lease.

6. On January 22, 1985, the debtor sent a letter to the Ierardis threatening to terminate the lease if payment of the taxes was not made within ten days.

7. On February 1, 1985, the debtor formally terminated the lease.

8. On March 20, 1985 Ierardis tendered payment of property taxes.

## DISCUSSION

The court grants summary judgment to the Ierardis because the debtor shares responsibility for the Ierardis' breach of the lease.[1]

Paragraph 10 of the lease calls for:
[S]uch payment as set forth above shall be paid and delivered to the landlord within fifteen days after the taxes become a lien or within fifteen days after a photocopy of such bill containing such charge as set forth above, is mailed to the Lessee by the Lessor, whichever is later.

The court interprets paragraph 10 to imply that the landlord will mail tax bills to the tenant at about the same time the landlord receives its tax bills, and/or wait to demand payment when a tax lien is attached

---

1. In interpreting a lease, the court must examine the purposes of the parties and the rights and obligations created thereby. *Farrell Lines* *Inc. v. City of New York*, 330 N.Y.S.2d 358 (1972); *Riverview Apartments Co. v. Golos*, 470 N.Y.S.2d 758 (1983).

**2**

to the property. In this case, it appears that tax bills were issued by East Meadow semi-annually. Since the debtor-landlord waited years to pass on the bills, it is unfair to the tenant to enforce a fifteen day deadline for payment.

As stated by the Ierardis:

When a landlord seeking possession has actively and pervasively instigated an offending condition, it will be estopped form strict construction of a lease provision in its favor. *Taylor v. Eli Haddad Corp.*, [118 Misc.2d 253] 460 N.Y.S.2d 886 (Sup.Ct., N.Y.County 1983). The three year delay in demanding tax payments amounts to a waiver of the literal language of the lease and a participation in said breach. *Id.*, [118 Misc.2d 253, 460 N.Y.S.] at p. 893.

The court finds that because of the landlord's untimely demand for payment of taxes, it was reasonable for the Ierardis to make inquiries into the validity of the bill and consequently tender payment 75 days after the demand was made. Thus, the trustee's complaint is hereby dismissed.

SO ORDERED.

