OPINION OF THE COURT

Per Curiam.

Order entered October 13, 1978 (Leonard N. Cohen, J.) modified by reversing so much thereof as directed final judgment in favor of the tenants dismissing the petition and as directed the refund of deposited rent, and final judgment directed in favor of landlord as prayed for in the petition; as modified, order affirmed, with $10 costs to the petitioner. However, enforcement of the final judgment shall be stayed until such time as landlord obtains a certificate of occupancy in compliance with the Multiple Dwelling Law. Tenants shall deposit with the clerk of the court below any and all arrears in rent and continue to deposit use and occupancy at the rate previously payable as rent, as the same becomes due, pending compliance. Upon proof by affidavit that compliance has been effected, landlord may move to vacate the stay and for the fund on deposit (22 NYCRR 2900.26 [e]). In the event of noncompliance, the stay shall continue until the further order of the court.
Petitioner is the owner of three loft buildings situated on Walker Street in lower Manhattan. Respondent is one of six tenants who executed a standard Real Estate Board loft lease, covenanting to use and occupy the demised premises for an "artist studio and for no other purpose.” (A seventh tenant is in possession on a monthly basis.) These lofts (with one exception) had been converted by previous occupants from raw industrial work space to habitable residential quarters, and tenants herein paid their predecessors a "fixture fee” for the value of improvements left behind. (In the remaining case, the tenant made his own original capital improvements to the vacant space.) The filed certificate of occupancy for each of the buildings allows for commercial use only. Despite the lease provisions limiting occupancy to commercial use, and despite the outstanding certificates of occupancy, the record amply demonstrates that both parties intended that the premises be used for joint living and working purposes ("living lofts”), and they were in fact so used.
Tenants defended these nonpayment proceedings (brought in response to a rent witholding action) by successfully invok *520 ing sections 301 and 302 of the Multiple Dwelling Law. Those statutes provide, in relevant part, that a multiple dwelling may not be occupied in whole or in part until the issuance of a certificate of occupancy (Multiple Dwelling Law, § 301, subd 1), and that rent may not be recovered by the owner for the period of such unlawful occupation (Multiple Dwelling Law, § 302, subd 1, par b). While petitioner initially took the position that the premises were not multiple dwellings (and therefore not subject to the section 302 defense), that position was abandoned during the course of the trial, at least as to premises 49 and 55 Walker Street, when petitioner testified that he had obtained a multiple dwelling registration number for these buildings by filing proposed plans for conversion with the Department of Buildings. As to number 47 Walker Street, even assuming that it is a structure separate and apart from number 49, we adopt the trial court’s finding that it also qualifies as a multiple dwelling as presently constituted.
The question framed for decision is whether the rent-forfeiture sanctions of the Multiple Dwelling Law are properly applied in the delineated circumstances. We conclude that they are not. While it is beyond dispute that this landlord was aware of and directly encouraged the conversions to residential lofts, it is equally clear that from the inception of these tenancies, tenants knew, or should have known, by the very terms of their leases as well as the surrounding conditions, that their occupancy was illegal. Essentially, both sides were content to abide by this arrangement, apparently secure in the knowledge that the city was not diligently inspecting these properties. Having entered into possession fully cognizant of the existing realities, tenants should not now be permitted to reap the benefits of occupancy and, at the same time, avoid the payment of rent. It is also observed that the unrebutted testimony of petitioner’s expert established that the buildings substantially complied with many of the minimum standards enumerated in the Multiple Dwelling Law; nor is there any proof that the condition of the premises poses a threat to the health and/or safety of the tenants.
The pervasive extent of the problem confronting us is best illustrated by a report of the Department of City Planning (received in evidence) indicating that fewer than 10% of the industrial buildings located in Manhattan which have undergone total or partial conversion have valid certificates of occupancy for residential use. It seems obvious that the Multi *521 pie Dwelling Law provision under review did not envision a situation involving wholesale conversion of commercial properties precipitated by shifting patterns of industrial use and a resurgent demand for mixed residential/commercial space. In this context, we are not persuaded that the implicit condonation of widespread rent withholding actions, or "strikes”, is the most feasible and equitable alternative to bring converted properties within the applicable multiple dwelling guidelines. That goal would be better achieved by the more stringent enforcement of building and zoning standards by the appropriate city agencies. In our discretion, however, we have conditioned enforcement of the final judgment granted herein upon petitioner’s procurement of the requisite certificate of occupancy. We view this relief as giving balance to the competing interests of both parties by avoiding hnjust enrichment to the tenants and stimulating expeditious completion of the actions necessary to legalize the conversion.
That part of the order appealed from dismissing the counterclaim for lack of proof is affirmed.