176

MICHAEL CORRIS, on Behalf of Himself and All Other Tenants, Residents of 129 Front Street, New York, New York, Similarly Situated, Appellant, v 129 FRONT Co. et al., Respondents, et al., Defendants.

MICHAEL CORRIS, on Behalf of Himself and All Other Tenants, Residents of 129 Front Street, New York, New York, Similarly Situated, Appellant, v 129 FRONT Co. et al., Respondents.

First Department, March 4, 1982

**APPEARANCES OF COUNSEL**

*Kenneth G. Schwarz* of counsel (*Fischbein Olivieri & Rosenholc,* attorneys), for appellant.

*Allen Green* of counsel (*Bell, Kalnick, Beckman, Klee & Green,* attorneys), for respondents.

**OPINION OF THE COURT**

SILVERMAN, J.

This is an appeal by plaintiff tenant from an order of Special Term granting in part and denying in part a preliminary injunction sought by plaintiff on behalf of

himself and other tenants with respect to termination of services by the landlord, and directing "plaintiffs" to pay current rent and rent in arrears to the landlord.

This is one of the many cases arising out of the renting of loft premises for residential purposes in the City of New York. As usual in such cases, the leases provide that the premises shall be occupied and used "for Artist's Studio and for no other purpose" and that the "premises be used for commercial purposes only. In no event may the demised premises be used for residential purposes." However, it would seem highly likely that neither side meant to take this restriction seriously. Disputes have arisen between the landlord and the tenants with respect to the upkeep of the building and the services therein.

This action is brought in the name of the named plaintiff "on behalf of himself and all other tenants, residents of 129 Front Street, New York, New York, similarly situated" for injunctive relief. The tenants have withheld rent. Apparently because of the decision in *Lipkis v Pikus* (99 Misc 2d 518, affd 72 AD2d 697) the landlord has been reluctant to bring summary dispossess proceedings.

In the present case the landlord has sought to enforce the provisions of the written lease essentially limiting his obligation to furnish heat, hot water and elevator services only to business hours and has directed the tenants to procure electrical services themselves from the utility company, all in accordance with the written lease. Special Term has preliminarily enjoined the limitation of heat, hot water and elevator services but has refused to enjoin the termination of electrical services, on the theory that the leases permit this and the tenants can presumably make their own arrangements with the utility company for such services.

So far as the termination of electrical services is concerned, we think the interest of justice will be served by maintaining the *status quo* until final judgment is rendered. Except for the nonpayment of rent (which we discuss below), the landlord shows no reason why the present situation should not be continued. Accordingly, plaintiff's motion for preliminary injunction to enjoin the termina-

tion of electrical services during pendency of this action is granted.

The order appealed from directs the payment of all rent past due and current. In form this is improper. There is no reason for an *injunction* to *direct* the payment of money; there is an adequate remedy at law for the recovery of money either by action to recover rent or by summary dispossess proceedings. That there may be legal defenses to an action at law does not render the legal remedy inadequate for the purpose of the rule.

However, this does not mean that the payment of rent may not be imposed as a *condition* of granting the extraordinary remedy of a mandatory injunction; such conditions are a traditional means of adjusting the equities between the parties.

Normally a landlord and a tenant have reciprocal obligations, the landlord to furnish space and services, the tenant to pay rent. Tenants in converted premises should obviously have essential services. On the other hand, it is economically impossible for landlords to continue to render such services indefinitely without receiving rent.

As Justice SANDLER points out, the widespread renting of loft premises for residential purposes with leases that pretend that they are not for residential purposes is "a social development [which] has resulted in unlawful arrangements of a kind not contemplated by, nor adequately responded to, by existing statutes, administrative regulations, or rules of law." In *Lipkis v Pikus (supra)* in such a situation, the court in a summary dispossess proceeding directed the tenants to deposit rent with the clerk of the court to be held presumably until the landlord procured the requisite certificate of occupancy, etc. For many landlords of converted loft premises this is impractical.

If premises are unsafe for residential occupancy, such occupancy should of course be terminated, whether it is a converted loft premises situation or any other. And so long as a residential occupancy without appropriate certificate of occupancy and multiple dwelling registration is deemed an aberrant situation which should not be permitted to continue, it is perfectly appropriate to say, as the statutes

and court rules do, that the landlord shall not be entitled to sue for rent without such a certificate of occupancy and multiple dwelling registration. But now these loft conversions have become so widespread that they meet an important segment of the residential needs of the community, and it seems unlikely that we can do without them. (See Multiple Dwelling Law, § 275, "Legislative Findings.") With respect to such loft conversions, nobody really expects or wants the properties to be reconverted to nonresidential uses, nor on the other hand, in many cases is it practical for the landlord to alter the premises sufficiently to obtain the appropriate certificate of occupancy or multiple dwelling registration.

In such circumstances it is unacceptable to leave a segment of the economic and social life of the city to operate outside the pale of the law.

At present there is a constant war of nerves and pressures between landlords and tenants with situations in which, on the one hand, tenants are left without services, and, on the other, landlords sometimes do not receive rent for years.

Obviously further legislative adjustment is needed to meet this *sui generis* situation. (See "the Loft Act", L 1980, ch 889; Multiple Dwelling Law, art 7-B.)

Perhaps as Justice SANDLER suggests, in such situations, in actions to recover rent either by action or by summary dispossess proceedings, it is desirable to take a more flexible view as to the requirements that landlords obtain appropriate certificates of occupancy or that there be registration statements currently on file as a condition to recovery by the landlord in such an action or special proceeding. In that connection, a re-examination of the principles set forth in *Lipkis v Pikus* (*supra*) and *Mandel v Pitkowsky* (102 Misc 2d 478, affd 76 AD2d 807), so as to permit such a more flexible approach, may be appropriate. That issue however is not directly before us in the present case.

But, in the meantime the traditional power of a court of equity to mold its decrees to adjust the equities of the parties may somewhat alleviate the situation.

Landlords who want rent must expect to furnish services; and tenants who receive services must expect to pay rent. Whatever other remedies tenants have, if the tenants, in addition to the usual remedies, want and are granted the additional extraordinary remedy of a mandatory injunction, a court of equity can *condition* that injunction on the current payment of all or a portion of the rent.

In the present situation it appears that the landlord has made a good faith effort to try to furnish services. Accordingly, we think it is proper on the facts of the present case to condition the landlord's injunctive obligation to furnish services upon the current payment of rent by all the tenants. We impose that condition, but limit it as to arrears to the time when Special Term first rendered its decision directing the payment of rent. As it is clear that the action is a representative action and that all the tenants are acting together, the condition imposed is that all the tenants shall pay the rent, both current and arrears back to June 11, 1981.

Accordingly, the order of the Supreme Court, New York County (KIRSCHENBAUM, J.), entered July 28, 1981 should be modified, on the law and the facts, and in the exercise of discretion, to the extent that the direction to the "plaintiffs" to pay their rent and additional rent both current and in arrears should be stricken; plaintiff's motion for preliminary injunction to enjoin defendants-respondents from discontinuing or interfering with plaintiff's electrical services during the pendency of the action should be granted; the preliminary injunctions granted hereby and in the order appealed from and in the order of March 6, 1981 should be conditioned upon the filing of an undertaking in the amount of $5,000, as required by the order of March 6, 1981, and on the further condition that the named plaintiff and the other tenants ("plaintiffs") shall pay all current rent and additional rent as the same becomes due at the rate prevailing prior to the institution of these actions, and that within 15 days after date of the order to be settled herein, plaintiffs shall pay to defendants all arrears of such rent and additional rent accruing since June 11, 1981, the date of Special Term's decision directing the payment of rent, without prejudice to the right of defendants to bring

any appropriate action or proceeding, or to interpose any counterclaim, to recover arrears of rent for any earlier period; and the order should be otherwise affirmed, without costs.

SANDLER, J. (dissenting in part). Notwithstanding the defendant landlord's misconduct in responding to a rent strike protesting deteriorating conditions by an unlawful threat to curtail fundamental services to residential tenants, I am inclined to agree with the court that on the record developed at the time of the motion to renew, there was a persuasive argument for permitting the defendant to recover current rents. The defendant alleged without effective contradiction that, following the original injunction, it made a conscientious effort to ascertain, and to respond appropriately to, the needs of the tenants. It does not seem fair that the landlord should be denied the right to recover the agreed rents when it is providing the required services.

The problem arises from the fact, candidly acknowledged by the defendant, that it would not have been entitled under the principles set forth in *Lipkis v Pikus* (99 Misc 2d 518, affd on opn of Appellate Term 72 AD2d 697) and *Mandel v Pitkowsky* (102 Misc 2d 478, affd for reasons stated at Appellate Term 76 AD2d 807) either to evict the tenants because of the unlawfulness of the residential tenancies, or for failure to pay rent, or to recover the rents that were being withheld. The landlord has no certificate of occupancy for a residential building nor, as to what is *de facto* a multiple dwelling (Multiple Dwelling Law, § 4, subd 7), has the landlord filed the notice required by section 325 of the Multiple Dwelling Law and subdivision b of section D26-41.21 of the Administrative Code of the City of New York, a failure rendered jurisdictionally defective by 22 NYCRR 2900.21 (f).

It was the legal barriers presented by the principles set forth in *Lipkis* and *Mandel* (*supra*) that led the landlord to threaten the curtailment of essential services which gave rise to the tenants' action for injunctive relief.

In short, the decision of this court extends to the landlord a right to recover rent which it would not have had in a proceeding under RPAPL 711 and does so in response to a

situation created by the landlord's unlawful threat to deny to the tenants essential services. The principle embodied in the decision of the court, in effect holding out an inducement to landlords to violate the law, is unacceptable. If, as applied to the facts presented here, the principles set forth in *Lipkis* and *Mandel* (*supra*) are sound, it is clearly wrong for this court to condition the plaintiffs' right to injunctive relief upon the payment of rent. If these principles should be revised to permit the recovery of rent by this landlord, and others in similar circumstances, the court is required to address that issue directly.

If landlords in the position of this defendant are to be permitted under appropriate circumstances to recover agreed rents without threatening tenants with curtailment of essential services, it is necessary to modify that aspect of the *Lipkis* and *Mandel* rule that denies such landlords the right actually to receive rents in RPAPL 711 proceedings until they secure a certificate of occupancy. Conceptually this kind of revision would not represent a radical departure from the principle already established in these cases that found inapplicable in this area, under specified circumstances, the statutory prohibition in sections 301 and 302 of the Multiple Dwelling Law against the recovery of rent from residential tenants for periods of time in which there was lacking an appropriate certificate of occupancy.

The more important and difficult question is whether such a change would represent a reasonable and sound response to the complicated social and economic problems presented. As to that, the information presented in this record is not very helpful. In the present state of judicial knowledge, and subject to the enlightenment that may be provided by future cases, I am inclined to favor a more flexible approach that would vest trial courts with the discretionary power, depending on the balance of factors presented in individual cases, to pursue varying approaches. In some cases the circumstances may make it clearly appropriate to defer the actual receipt of rent payments until a certificate of occupancy is secured. In others it may be preferable to permit landlords to recover rent payments on a showing that a good faith effort has

been undertaken to conform the buildings to the requirements of the Multiple Dwelling Law and to secure an appropriate certificate of occupancy. In still others, the particular complex of factors may make it appropriate for the courts to permit landlords to receive rent payments without undertaking the expense of conforming their buildings to the requirements of the Multiple Dwelling Law.

The possibility cannot be excluded that there may be situations in which it is on balance undesirable to require the conversion of loft buildings to multiple dwellings, and in which it is also undesirable to require the termination of existing residential tenancies. As to such buildings, it is surely not a viable, long-term solution to require landlords to provide a full range of essential and costly services to residential tenants while denying them the right to receive rents.

A separate legal impediment to the kind of change suggested here is presented by subdivision (f) of rule 2900.21 of the Rules of the New York City Civil Court (22 NYCRR 2900.21 [f]) which provides in pertinent part that in every summary proceeding to recover possession of real property pursuant to RPAPL 711 the petitioner must allege either "(1) that the premises are not a multiple dwelling, or, (2), that the premises are a multiple dwelling and pursuant to the Administrative Code, article 41, there is a currently effective registration statement on file".

As the caption to the rule indicates, the above allegations were deemed to be required under section 325 of the Multiple Dwelling Law and subdivision b of section D26-41.21 of the Administrative Code of the City of New York. The Administrative Code section provides in pertinent part that an owner who fails to file such a statement of registration, "shall be denied the right to recover possession of the premises for non-payment of rent during the period of non-compliance, and shall, in the discretion of the court, suffer a stay of proceedings to recover rents, during such period."

In *Mandel v Pitkowsky* (102 Misc 2d 478, *supra*) the Appellate Term, citing subdivision 7 of section 4 of the Multiple Dwelling Law, held that a building occupied by at

least three loft tenants living independently of each other is a *de facto* multiple dwelling and that accordingly the petition was jurisdictionally defective since it did not allege filing of the registration statement in accordance with 22 NYCRR 2900.21 (f), and no proof of such filing was offered at the trial. Consistent with the approach already taken in this area as to sections 301 and 302 of the Multiple Dwelling Law in *Lipkis* and *Mandel* (*supra*), and the extension of that approach suggested here, the *Mandel* rule should be revised to hold that the requirements of the Civil Court rule, and of the Administrative Code section which it undertook to implement, are inapplicable to the situation presented by the lease of commercial property for residential purposes to tenants who are, or reasonably should have been, aware of the illegality of the arrangement.

We are confronted here with a perplexing set of problems in which a social development has resulted in unlawful arrangements of a kind not contemplated by, nor adequately responded to, by existing statutes, administrative regulations, or rules of law. If there are presently apparent general principles that would yield on a consistent basis wholly satisfactory responses to these problems, I am not aware of them.

Whatever else may be doubtful, it is surely clear that the existing body of law should not be evaded by a holding that in effect provides an inducement to landlords unlawfully to curtail, or threaten the curtailment of, essential services to residential tenants. So long as the decision of this court leaves wholly intact the principles set forth in *Lipkis* and *Mandel* (*supra*), I cannot agree with that part of the determination that conditions the tenants' clear right to injunctive relief on the payment of current and ongoing rents.

MURPHY, P. J., MARKEWICH and FEIN, JJ., concur with SILVERMAN, J.; SANDLER, J., dissents in part in an opinion.

Order, Supreme Court, New York County, entered on July 28, 1981, modified, on the law and the facts, and in the exercise of discretion, to the extent that the direction to the "plaintiffs" to pay their rent and additional rent both current and in arrears stricken; plaintiff's motion for preliminary injunction to enjoin defendants-respondents from

discontinuing or interfering with plaintiff's electrical services during the pendency of the action granted; the preliminary injunctions granted hereby and in the order appealed from and in the order of March 6, 1981 is conditioned upon the filing of an undertaking in the amount of $5,000, as required by the order of March 6, 1981, and on the further condition that the named plaintiff and the other tenants ("plaintiffs") pay all current rent and additional rent as the same becomes due at the rate prevailing prior to the institution of these actions, and that within 15 days of the date of the order to be settled herein, with notice of entry, plaintiffs pay to defendants all arrears of such rent and additional rent accruing since June 11, 1981, the date of Special Term's decision directing the payment of rent, without prejudice to the right of defendants to bring any appropriate action or proceeding, or to interpose any counterclaim, to recover arrears of rent for any earlier period; and the order is otherwise affirmed, without costs and without disbursements.