OPINION OF THE COURT
Edward H. Lehner, J.
The major issue presented here is whether persons who are not certified artists are entitled to the benefit of section 6 of chapter 889 of the Laws of 1980 (the Loft Law).
*202 This is an action in ejectment against certain tenants of loft space at 110 West 27th Street in Manhattan. The plaintiff had previously sought to evict them in the Civil Court in a summary holdover proceeding. The proceeding was dismissed because the premises were found to be a de facto multiple dwelling (the court finding the premises contained at least four residential units) for which the landlord had failed to file a multiple dwelling registration statement, an allegation of the filing of which was held necessary in order to sustain a petition in summary proceedings under subdivision (f) of section 2900.21 of the Rules of the Civil Court of the City of New York (22 NYCRR 2900.21 [f]).
Undaunted by its loss in the Civil Court, the landlord has brought the instant action seemingly unencumbered either by said Civil Court rule (which applies to summary proceedings), section 302 of the Multiple Dwelling Law (which prohibits recovery of rent during an illegal occupancy), section 325 of the Multiple Dwelling Law (which prohibits recovery of rent where an owner fails to file a multiple dwelling registration statement), nor subdivision b of section D26-41.21 of the Administrative Code of the City of New York (which requires an allegation of multiple dwelling registration in every summary proceeding).
Plaintiff has moved for partial summary judgment or, in the alternative, to strike certain defenses. Although defendants have not formally cross-moved for summary judgment, they have requested same in their answering papers.
The issue which this court finds resolves the litigation is plaintiff’s claim that the defendants are not entitled to the protection of the Loft Law. Such law reads as follows:
“a. Notwithstanding any provision of law to the contrary and without regard to the provisions of any lease or other rental agreement, this section shall apply in any city having a population of one million or more to any rental dwelling unit in a multiple dwelling, as defined in subdivision seven of section four of the” multiple dwelling law, whether or not a certificate of compliance or occupancy has been issued therefor and which at any time was occupied for loft, commercial, manufacturing or other non-residential purposes, when (i) the owner knew or had reason to *203 know at the inception of the tenancy that the tenant would occupy all or part of such unit for residential purposes, or (ii) whenever the owner shall have accepted rent from or on behalf of a tenant actually occupying all or part of such unit for residential purposes for any period of three successive months.
“b. The tenant of any dwelling unit covered by this section shall, at the expiration of his lease or other rental agreement, written or unwritten, be entitled to a lease for a term of not less than one year. The monthly rent payable during the first year of such lease shall not exceed by more than eleven percent the actual monthly rent payable for the final month of the expired lease or rental agreement.
“c. It shall not be a ground for an action or proceeding to recover possession of a dwelling unit, covered by this section, that the occupancy of the dwelling unit by the tenant is illegal or in violation of provisions of the tenant’s lease or other rental agreement because a residential certificate of occupancy or compliance has not been issued for the building in which such dwelling unit is located.” (L 1980, ch 889, § 6.)
By reason of other sections of said chapter 889, the right to a one-year renewal lease is applicable to leases which expired between June 11, 1980 and June 30, 1981. The intent of the statute was clearly to provide a moratorium on evictions for a one-year period in order to give the Legislature an additional opportunity to solve the difficult problems relating to loft tenants who are residing in premises which may not be legally occupied for residential use. Unfortunately, the Legislature failed to act during the 1981 session with the result that the moratorium expired on June 30, 1981. From the recent decision in Corris v 129 Front Co. (85 AD2d 176), it appears that henceforth lower courts will be given greater discretion in dealing with these matters.
In the case at bar the tenant’s lease expired January 31, 1981, but the landlord refused to offer a renewal lease. Plaintiff takes the position that since the defendants “brought no action or special proceeding to compel the landlord to offer such a lease”, defendants now have no *204 right to claim the protection of the Loft Law in light of its expiration without a lease having been executed. Plaintiff is thus arguing that by violating the law in refusing to tender the mandated renewal lease when the tenant’s lease expired on January 31, 1981, it is now entitled to greater rights than had it complied. To sustain such position would encourage wrongdoing and contempt for the legal process. Law violators should not be able to reap rewards through the courts.
The other contention put forth by plaintiff is that the Loft Law is only applicable to certified artists and since defendants are not artists, they are not entitled to its protection. In this regard, plaintiff cites the decision of Justice Blyn in Callis v 91 Fifth Ave. Corp. (NYLJ, Nov. 25, 1981, p 11, col 3). There the court held that the Loft Law had to be read in conjunction with article 7-B of the Multiple Dwelling Law and since the tenants were using the premises for “joint living-work quarters”, they had to establish that they were artists as defined in section 276 of such law.
This court disagrees with the determination in that case. The Loft Law makes no reference to said article and is not an addition or amendment to any of the consolidated laws. To qualify for the protection of the section, a tenant must only reside in a rental unit in a multiple dwelling in New York City “which at any time was occupied for loft, commercial, manufacturing or other non-residential purposes” where the owner either (i) knew or had reason to know that the premises were to be used for residential purposes, or (ii) accepted rent from a tenant actually occupying a unit for residential purposes for a period of three consecutive months. The section is stated to be applicable regardless of whether a certificate of occupancy for residential purposes has been issued.
The language of the statute is clear and there is nothing in its legislative history (see Memorandum of State Executive Dept, McKinney’s NY Session Laws, 1981, p 2374) that indicates any intent to limit its applicability as was done in Callis v Fifth Ave. Corp. (supra).
Tenants (artists and nonartists alike) occupying loft space converted to residential use without compliance with *205 applicable zoning and building codes have for the last several years been experiencing great uncertainty with respect to their right of continued occupancy. The problems of such tenants (who have contributed significantly to the revitalization of lower Manhattan) has been the subject of legislative concern for several years. (For a discussion of the issue, see Lehner, Sweet & Allen, City Proposes Remedies for Illegal Conversions of Lofts to Residences, NYLJ, Nov. 15, 1978, p 23, col 5.) The one-year moratorium enacted during the November, 1980 special session of the Legislature clearly was intended to protect all such tenants and hence includes the defendants herein whose lease expired during the period of the moratorium and whose occupancy is otherwise covered by the provisions of the Loft Law.
Since defendants were entitled to a one-year lease for the period commencing February 1,1981 and were improperly denied same, the court will consider the landlord to have done what the law required it to do, i.e., provide tenant with a one-year renewal lease expiring January 31, 1982. Thus, the 30-day notice dated July 30,1981 purporting to terminate a month-to-month tenancy as of August 31, 1981 (after the expiration of the Loft Law on June 30, 1981) is a nullity.
In light of the fact that this ejectment action is based on such notice, the court, pursuant to the last sentence of CPLR 3212 (subd [b]), grants summary judgment to defendants dismissing all causes of action of the complaint.
It has been pointed out that the tenants have not paid rent for several months after having successfully defeated plaintiff’s summary proceeding. This action was instituted in this court only because of such dismissal. With the authorization provided in Corris v 129 Front Co. (supra) for a more “flexible approach” in this area, this dismissal is without prejudice to landlord instituting such proceeding as it deems advisable to recover rent. In this regard, the Loft Law provides that the increase in rental that may be charged by an owner for a one-year renewal “shall not exceed by more than eleven percent” the rental payable under the expired lease. Since the statute thus does not mandate an 11% increase, the court will leave to future *206 proceedings a determination of the amount of rent payable during the year commencing February 1, 1981, as well as the amount, if any, tenant may be entitled to as an abatement under the warranty of habitability. However, it should be noted that the Conciliation and Appeals Board has denied retroactive rent increases to landlords who fail to comply with the Rent Stabilization Law mandate that renewal leases be tendered and that such practice has been upheld by the courts. (See Matter of Briar Hill Apts, v Conciliation & Appeals Bd., 44 AD2d 816.)
Finally, the court wishes to note that the multiplicity of suits between the parties hereto, with the ensuing waste of judicial resources and legal costs, is due to the multitiered court system presently existing in New York. The court again recommends that if the Legislature is not to merge the various trial courts, which is strongly urged, it should at least grant the Civil Court jurisdiction over all aspects of landlord-tenant law.