STEPHANIE ROSE, Respondent, v GENESIS REAL ESTATE, INC., Appellant.

First Department, May 17, 1984

**APPEARANCES OF COUNSEL**

*Joseph Burden* of counsel (*Rosenberg & Estis, P. C.,* attorneys), for appellant.

*Jennifer A. Garvey* of counsel (*Daniel L. Alterman* with her on the brief; *Stolar Alterman Wagner & Boop, P. C.,* attorneys), for respondent.

**OPINION OF THE COURT**

SILVERMAN, J.

Defendant appeals from an order of Special Term denying defendant's motion for summary judgment declaring in defendant's favor.

This is an action by a tenant for a declaratory judgment granting the tenant a one-year renewal lease dated prospectively from the date such a lease shall be tendered by defendant landlord, and for other relief.

Plaintiff had a lease of the third floor in a loft building in Manhattan for the period April 15, 1976 to April 14, 1981.

Although the lease said that the tenant shall use the premises for an artist studio only, tenant alleges that in fact it was used as joint living work quarters. Significantly there was a certificate of occupancy for the premises permitting the use or occupancy for "Joint Living Work Quarters for Artists."

As the lease expired by its terms on April 14, 1981, tenant has since then been a holdover unless tenant's occupancy is protected by some statute. It is clear that the premises are not rent controlled; rent stabilization is inapplicable because the building contains less than six dwelling units (Rent Stabilization Law [Administrative Code of City of New York], § YY51-3.0); and article 7-C of the Multiple Dwelling Law (the Permanent Loft Law) does not apply because the building does not lack a certificate of compliance or occupancy pursuant to section 301 of the Multiple Dwelling Law (Multiple Dwelling Law, § 281, subd 1).

Tenant, however, points for protection to the provisions of the Interim Loft Law (L 1980, ch 889). Section 6 of that statute provided (with respect to dwelling units covered by the statute) that in the case of any lease expiring after June 11, 1980, the tenant shall be entitled to a lease for a term of not less than one year at a rental that shall not exceed by more than 11% the rent payable for the final month of the expired lease. However, the statute (§ 8) provided that section 6 "shall cease to have any force or effect and shall terminate on" June 30, 1981. As plaintiff's lease expired April 14, 1981, plaintiff was entitled under the statute to a lease for a term of not less than one year, i.e., to April 14, 1982.

The landlord did not tender such a lease, apparently in the belief that the statute did not apply where there was a residential certificate of occupancy. Civil Court disabused defendant of that idea in a summary proceeding, which the landlord brought before April 14, 1982. Now the tenant wants a one-year lease to run prospectively from whatever date the landlord shall finally deliver such a lease to the tenant, i.e., at least three years beyond the date that the Interim Loft Law of 1980 contemplated. We do not think the tenant is entitled to it.

The tenant has had the full benefit of the Interim Loft Law: (a) The tenant has had occupancy for the year contemplated by the statute, i.e., to April 14, 1982, and at a rent less than that contemplated by the statute, i.e., no 11% increase; and (b) the tenant has had occupancy for two years beyond the period contemplated by the statute, still at a rental at that same rate.

It is true that the tenant's possession has not been peaceful in the sense that the landlord has brought summary proceedings to evict the tenant. The first such summary proceeding was brought before April 14, 1982, the outside date of the renewal granted to the tenant by the statute, and was based on the landlord's misreading — not entirely unreasonable — of the statute. Subsequent summary proceedings were brought after April 14, 1982, i.e., after the outside date contemplated by the statute, and were defeated for procedural defects on the landlord's part. But we think the tenant's continuance in possession for two years after the outside date contemplated by the statute, at a lower rent than that contemplated by the statute, is a benefit to the tenant which far outweighs the annoyance of these summary proceedings.

Our attention has been called to two lines of authority as to when a new lease required by statute shall begin to run — cases under the Interim Loft Law and cases under rent stabilization.

With respect to the precise situation of a renewal right under the Interim Loft Law, this court recently said: "Of course, it may be that because these premises were initially rented as an 'ARTIST'S STUDIO', they are subject to and the tenants are entitled to the benefits of the provisions of article 7-B of the Multiple Dwelling Law. In addition to conferring other benefits and protections upon 'Loft Law' tenants, section 275 thereof as amended by chapter 889 (§ 6, subd b) of the Laws of 1980, entitled the tenant 'at the expiration of his lease or other rental agreement, written or unwritten * * * to a lease for a term of not less than one year'. However that amendment which by its terms was to apply to 'any lease or rental agreement expiring after June eleventh, nineteen hundred eighty' (L 1980, ch 889, § 9), ceased to have any 'force or effect and * * * terminat[ed] on

the thirtieth day of June, nineteen hundred eighty-one'. (L 1980, ch 889, § 8.) Thus, even if the tenant's lease was extended by statute for one year beyond its April 30, 1981 expiration so as to expire on April 30, 1982, it clearly had expired and was at an end when the notice to cure was served on or about July 20, 1982. Thus there was no existing lease to be preserved". (*Newmann v Mapama Corp.,* 96 AD2d 793, 795.) (To the same effect, see *Trans World Maintenance Serv. v Rodd,* 113 Misc 2d 201, 205; see, also, *Axelrod Co. v Duffin & French,* NYLJ, Sept. 3, 1982, p 6, col 1 [App Term, 1st Dept].) As these cases interpret the Interim Loft Law, they would seem to be directly applicable.

There is a line of cases arising under the Code of the Rent Stabilization Association of New York City, Inc., in which the rule apparently is that if the landlord has not tendered a lease within the period required by rent stabilization, the Conciliation and Appeals Board will direct that the lease be issued for a period commencing when the new lease is executed rather than when the former lease expired, and the courts have sustained that. (*Matter of Briar Hill Apts. v Conciliation & Appeals Bd.,* 44 AD2d 816.) Even there, however, this court has made the lease retroactive where there has been an inordinate delay so as to render it grossly inequitable to make the lease prospective (though the delay appears to have been largely within the CAB) (*Matter of Sommer v New York City Conciliation & Appeals Bd.,* 93 AD2d 481, 486).

The rent stabilization cases are distinguishable from the present case in these respects: (a) The court in the rent stabilization cases is reviewing the determination of an administrative agency, and the test to be applied is not whether we agree with the agency but whether there is a rational basis for the decision by the administrative agency. (b) More important are the differences between the rights of tenants under rent stabilization and those under the Interim Loft Law:

(i) Under rent stabilization a tenant can expect to retain possession of his apartment essentially indefinitely, so that giving the tenant a prospective lease does not give the tenant possession to which he would not otherwise be

entitled. Under the Interim Loft Law the tenant cannot expect possession beyond one year after the expiration of his lease.

(ii) It follows that requiring a landlord under rent stabilization to give a prospective lease merely deprives the landlord of the increases he would have been entitled to had he complied with the statute by tendering a lease at the required time. Here, the landlord has already been deprived of the increase it would have been entitled to under a renewal lease.

(iii) Perhaps correlative to this, we note a difference in the language of the two statutes. The Rent Stabilization Code requires the landlord affirmatively to offer to renew the lease to the tenant in a specified period — 120 to 150 days before the expiration of the lease (Rent Stabilization Code, § 60). The Interim Loft Law does not in terms require the landlord to offer anything; it merely says that the tenant "shall * * * be entitled to a lease" (L 1980, ch 889, § 6, subd b). And in particular, it does not require the landlord to do something at any time before the expiration of the lease, or for that matter, at any specified time.

(iv) Further, the Rent Stabilization Code provided an administrative procedure and an administrative agency whereby a landlord who believes that the tenant is not entitled to a renewal lease may obtain a determination of that, i.e., the Conciliation and Appeals Board. The Interim Loft Law contains no such procedure. A landlord who believes that the tenant is not entitled to the one-year renewal must make its own decision on that point. It can only obtain a determination by not acquiescing in the renewal and by bringing an appropriate judicial proceeding; this landlord followed that procedure. Before the expiration of the lease, it notified the tenant that it did not intend to renew, and after the expiration, brought summary proceedings.

We note that the last summary proceeding was defeated on the tenant's contention that no 30-day notice had been served, a notice required if the tenant was a month-to-month tenant. Now a new 30-day notice has been served.

By its terms, the Interim Loft Law is to be of no further force or effect after June 30, 1981. Of course a lease

directed to commence before then continues for its term. That is not inconsistent with the expiration of the Interim Loft Law; it is the lease beginning during the life of that law that continues. But to say that a new lease is to be given two years after the expiration of the old lease and of the Interim Loft Law, prospectively, is perhaps inconsistent with the provision that that law shall be of no force or effect after June 30, 1981. For if that law is of no force or effect, what law is it that requires a new lease to begin two years later? The purpose of the Interim Loft Law was to provide provisional protection for loft tenants until a more permanent law could be enacted (Memorandum of State Executive Department, McKinney's Session Laws of NY, 1981, pp 2374-2375). Two years later, when a new law has been enacted which excludes these tenants from its protection, the provision of the interim or provisional law for a one-year lease no longer serves any statutory function.

In these days of drastic housing shortages in the City of New York, it is no light thing to say that the residential tenant must move. And in recognition of this fact, the Legislature has extended to tenants protection in many situations. But it seems to us that it has drawn the line here. It has not extended protection beyond a year after the expiration of their leases to tenants in loft buildings where there is a residential certificate of occupancy, and where there are less than six dwelling units in the building so that rent stabilization does not apply. (Cf. *Lebowitz v Mingus,* 100 AD2d 816.)

The tenant here has received all the benefit that the statutes contemplated for her.

The order appealed from should be reversed, on the law, without costs, and summary judgment should be granted in favor of defendant (a) on the first cause of action in the complaint, declaring that plaintiff is not entitled to a renewal lease dated prospectively from the date it is tendered and executed; (b) on the second cause of action in the complaint, dismissing plaintiff's claim for a permanent injunction; and (c) on the fifth counterclaim in the answer, declaring that article 7-C of the Multiple Dwelling Law (L 1982, ch 349) is inapplicable to the subject premises.

SULLIVAN, J. P., ROSS and ALEXANDER, JJ., concur.

Order, Supreme Court, New York County, entered on August 30, 1983, unanimously reversed, on the law, without costs and without disbursements, and summary judgment granted in favor of defendant (a) on the first cause of action in the complaint, declaring that plaintiff is not entitled to a renewal lease dated prospectively from the date it is tendered and executed; (b) on the second cause of action in the complaint, dismissing plaintiff's claim for a permanent injunction; and (c) on the fifth counterclaim in the answer, declaring that article 7-C of the Multiple Dwelling Law (L 1982, ch 349) is inapplicable to the subject premises.