## (July 5, 1984)

■ ELIAHU LIPKIS, Appellant, v MARIO PIKUS et al., Respondents. — Order, Appellate Term, Supreme Court, First Department, entered November 28, 1983 (122 Misc 2d 833), affirming order, Civil Court, New York County (L. Evens, J.), entered May 9, 1983 (122 Misc 2d 136), vacating warrants of eviction, is reversed, on the law and the facts, and in the exercise of discretion, with costs, and the warrants of eviction are reinstated, substantially for the reasons stated in the dissenting memorandum of Justice Thomas J. Hughes at the Appellate Term. ¶ We add that because of tenants' continued default in making deposits for use and occupancy pursuant to that court's order of March 30, 1979, the Appellate Term more than two years ago vacated the stay

contained in that order, and directed that petitioner may proceed to enforce final judgments of possession only. ¶ Warrants of eviction were issued on January 22, 1982 and this court denied leave to appeal on February 22, 1982. Only the frivolous action in the Federal court delayed the execution of the warrants until after the Loft Law (Multiple Dwelling Law, art 7-C) was enacted. ¶ Further, there is no statement in the Loft Law directing the vacatur of any prior judgments from which all avenues of appeal had been exhausted prior to the effective date of the Loft Law, or directing a stay of warrants of eviction issued before the enactment of the Loft Law. Subdivision 1 of section 285 of the Multiple Dwelling Law, pointed to as justifying such interference, merely provides that: "the owner of an interim multiple dwelling may recover rent payable from residential occupants qualified for the protection of this article on or after April first, nineteen hundred eighty, and maintain an action or proceeding for possession of such premises for non-payment of rent, provided that he is in compliance with this article." ¶ In terms the section merely affirmatively *permits* such suits — presumably in situations where such suits could formerly not be maintained. The section — captioned "Owner protection" — does not in terms *forbid* such suits in any situation — certainly not where such suits could be maintained even before the Loft Law (as the 1979 and 1982 decisions have determined this case could be).[*] ¶ In any event, petitioner is not seeking to "maintain" an action or proceeding for possession of such premises; petitioner had already maintained such an action and obtained final judgments from which all appeals had been exhausted and a determination by the appellate courts of this State that the warrants of eviction should no longer be stayed before the enactment of the Loft Law. The statute cannot fairly be read to mean that such a petitioner, who has such final judgments, must now bring a new action to obtain the same final judgments. ¶ Our system of justice contains extraordinarily broad provisions for review and correction of judgments. Significant issues in the present lawsuit have been before the Civil Court on at least three occasions, before the Appellate Term of the Supreme Court on at least four occasions (e.g., *Lipkis v Pikus,* 99 Misc 2d 518), before this court on at least four occasions (e.g., *Lipkis v Pikus,* 72 AD2d 697; *Matter of Pikus v Dudley,* 90 AD2d 700), and before the United States District Court and the United States Court of Appeals (plus two attempted appeals to our Court of Appeals dismissed on jurisdictional grounds [51 NY2d 874, 56 NY2d 612]). But litigation must end sometime. At some point the dispute must be deemed decided and the rights of the parties fixed and no longer subject to reexamination (except for the rare condition of supervening new facts or law). At that point the judgment of the court is to be enforced and obeyed; it is not to be ignored, evaded, nibbled away, or stalled by new frivolous lawsuits or other devices. Concur — Murphy, P. J., Sullivan and Silverman, JJ. Fein and Kassal, JJ. dissent in separate memoranda as follows:

Fein, J. (dissenting). I would modify the order of the Appellate Term entered November 28, 1983 (122 Misc 2d 833 [Dudley and Sullivan, JJ., concurring; Hughes, J., dissenting]), which affirmed the order of the Civil Court, New York County (L. Evens, J.), entered May 9, 1983 (122 Misc 2d 136), vacating warrants of eviction issued against the tenants, only to the extent of

---

[*] A different section, section 286 of the Multiple Dwelling Law, protects tenants from eviction on the ground that the occupancy is illegal because residential occupancy is not permitted by the lease, or because there is no residential certificate of occupancy. But the eviction judgments in this case were for nonpayment of rent. We think the dissent, in suggesting proceedings before the Loft Board, does not give adequate weight to this distinction. The warrants of eviction in this case are not based on some default that the Loft Law protects tenants against; they are based on refusal to pay rent after a final judgment adjudicated the rights of the parties and directed such payment.

reinstating the judgment of possession and the warrants of eviction but staying execution of such warrants until further order of the Civil Court or of the Loft Board, and remanding the proceeding to the Civil Court to be held in abeyance pending determination by the Loft Board, with a direction that petitioner commence a proceeding before the Loft Board or proceed promptly with such proceedings as are now before such Board and that the tenants cooperate in such proceedings, and a further direction that all of the moneys on deposit with the court pursuant to the order of the Appellate Term granting final judgment in favor of the landlord (99 Misc 2d 518) be paid over to the landlord and that tenants pay the landlord for use and occupation at the rates fixed in their leases unpaid rent for all periods up to August 16, 1982, the date of the Civil Court stay, pursuant to the Loft Law, and pay into court such rent for the period thereafter within 30 days after the date of the order to be settled herein, and continue to deposit such rent in court on a monthly basis until further order of the court or the Loft Board. Upon failure of any tenant to make such payments within 30 days, the stay should be vacated and the warrant executed as to such tenant. ¶ I agree with the majority that there is no statement in article 7-C of the Multiple Dwelling Law, "Legalization of Interim Multiple Dwellings" (Loft Law), directing the vacatur of prior judgments from which all avenues of appeal had been exhausted prior to the effective date of the Loft Law or directing a stay of warrants of eviction issued before enactment of the Loft Law. ¶ I also agree that petitioner is not seeking to maintain this action or proceeding for possession of the premises pursuant to subdivision 1 of section 285 of the Multiple Dwelling Law. Petitioner has no need to rely on that provision, expressly enacted for the protection of the landlord. Prior to enactment of the Loft Law, petitioner obtained a final judgment of possession, followed by determinations by every court to which application was made that warrants of eviction should no longer be stayed. ¶ However, it is plain that by enacting the Loft Law the Legislature intended to provide a procedure for resolving the ongoing problems arising from the occupation of lofts as residences in buildings not in compliance with the Multiple Dwelling Law as preexisted the adoption of the Loft Law. It is equally plain that the premises here involved come within the compass of the statute. As the history of this litigation, outlined in the majority opinion, demonstrates, this is a classic loft residence case. ¶ The issue, therefore, is whether the Loft Law is applicable in a case in which warrants of eviction have been issued but not executed, albeit execution was stayed because of tenants' frivolous defiance of court orders. ¶ RPAPL 749 (subd 3) provides that the issuance of a warrant of dispossess does not "deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof. Petitioner may recover by action any sum of money which was payable at the time when the special proceeding was commenced and the reasonable value of the use and occupation to the time when the warrant was issued, for any period of time with respect to which the agreement does not make any provision for payment of rent." ¶ At issue here is whether the provisions of the 1982 Loft Law furnish a basis for finding good cause to vacate the warrants. The intention of the Loft Law is to provide for a building-by-building approach to resolve the illegal residential status of loft buildings formerly or presently used as manufacturing, warehousing or commercial space (memorandum of legislative representative of City of New York, McKinney's Session Laws of NY, 1982, p 2479). This is what was attempted by the Appellate Term the first time it ruled on this action in 1979 (99 Misc 2d 518). The Loft Law was adopted in recognition of the fact that intervention by State and local governments was essential to effect a means to resolve the ongoing controversy between landlords and tenants of such space. This case is a prime example. As the Appellate

Term noted, the original occupancy was illegal and recognized by both sides as such. Neither side should be permitted to take advantage of the other in such circumstances. Each reeks of self-proclaimed virtue but intransigence has been the rule. As this court recognized in *Corris v 129 Front Co.* (85 AD2d 176), a legislative remedy was imperative. The Loft Law was plainly intended to be remedial (see *465 Greenwich St. Assoc. v Schmidt,* 116 Misc 2d 62). ¶ At the time article 7-C became effective, June 21, 1982, the warrants of eviction had been issued but had not been executed, albeit the execution of the warrants had been stayed and delayed only by reason of actions or proceedings instituted by the tenants, ultimately held to be frivolous. The statute does not explicitly state that it is retroactive or applicable to all pending proceedings. It states only that it applies to "interim multiple dwellings", which are basically loft buildings located in New York City for which no certificate of compliance or occupancy has been issued and "on December first, nineteen hundred eighty-one [were] occupied for residential purposes since April first, nineteen hundred eighty as the residence or home of any three or more families living independently of one another." (Multiple Dwelling Law, § 281, subd 1, par [iii].) However, it is manifest that the remedial purpose of the statute was to make it applicable to all tenants still in possession of such dwellings when the statute took effect, by its terms, immediately (L 1982, ch 349). ¶ The statute acknowledges that the courts had declared such buildings to be " 'de facto' " multiple dwellings requiring State intervention to provide a means to legalize the existing illegal living arrangements (Multiple Dwelling Law, § 280). The Legislative intention was clear that the law should apply to all such occupants, including those involved in pending actions. It is notable that in another context involving the extension of rent stabilization to buildings held by the courts not to be subject to rent stabilization, the legislative action to safeguard such tenants was held to be retroactive (*Tegreh Realty Corp. v Joyce,* 88 AD2d 820). In that case the tenant was in possession at the time the statute took effect only as a result of a stay of execution of warrants which had already issued. ¶ It has long been held that remedial statutes are to be given a retrospective operation since the purpose is to spread the results as widely as possible. The requirement of express words in order to force a retrospective construction is not to be applied to remedial legislation where vested or constitutional rights are not involved (McKinney's Cons Laws of NY, Book 1, Statutes, § 54 [and cases there cited]). As that section states, such statutes apply to pending actions unless they are specifically exempted or impair vested property rights. ¶ Cases involving warrants of eviction have held that although the issuance of the warrant severs the landlord-tenant relationship, the matter is still deemed subject to judicial action before the warrant is executed (*Whitmarsh v Farnell,* 298 NY 336; *Tegreh Realty Corp. v Joyce, supra*). The court retains the authority to stay a warrant and thus to revive the landlord-tenant relationship (RPAPL 749, subd 3; *New York City Housing Auth. v Torres,* 89 Misc 2d 404, affd 90 Misc 2d 575, revd on other grounds 61 AD2d 681). In both *Whitmarsh* and *Tegreh,* remedial rent control statutes were held applicable to cases where warrants had been issued but not executed (see *People ex rel. Durham Realty Corp. v La Fetra,* 230 NY 429; *People ex rel. H. D. H. Realty Corp. v Murphy,* 194 App Div 530, affd 230 NY 654, involving a prior statute designed to remedy a then-existing housing emergency problem). ¶ Although, as ruled by the Appellate Term in its October 20, 1982 order in this case, the Loft Law does not excuse the nonpayment of rent and obviously does not condone the disregard of court orders, it does recognize that the landlord-tenant relationship involves reciprocal obligations. A landlord who provides space and services is entitled to receive payment therefor (*Corris v 129 Front Co., supra*). A landlord who receives rent must provide appropriate

space and services. The history of this very case so demonstrates (*Lipkis v Pikus,* 99 Misc 2d 518, affd 72 AD2d 697). The Loft Law (Multiple Dwelling Law, §§ 280, 286) intends that reasonable rents be established and paid subject to the landlord's compliance with its terms as a prerequisite to recovery of rent and maintenance of a nonpayment proceeding (Multiple Dwelling Law, § 285, subd 1). Failure to comply will subject the owner of the building to all of the penalties in article 8 of the Multiple Dwelling Law (Multiple Dwelling Law, § 284, subd 1, par [ii]). What is clear is a legislative intent to maintain the residences of those in possession and to effectuate legalization. The burden is to be shared by the landlord and the tenant, an obvious characteristic of the relationship, apparently not recognized by either side here. Obviously tenants, who, over the years, have not paid the rent, have deprived the landlord of the means with which to legalize the occupancy. As in *Corris (supra),* a practical solution in this case would appear to lie with a direction that the moneys already paid into court pursuant to the prior orders be turned over to the landlord together with rents for all periods up to the date of the Civil Court stay pursuant to the Loft Law, August 12, 1982, to be utilized for legalization of the space for dwelling purposes and that the tenants' continued occupation of the premises be subject to the payment into court of rent for use and occupancy for subsequent periods until further order of the court or until action of the Loft Board pursuant to the Loft Law. ¶ Thus the purposes of the statute would be met. The effect of the Civil Court and the Appellate Term orders vacating the final judgments of possession and warrants of eviction without any provision for payment over of any moneys by way of rent for use and occupation would impose all of the burdens on the landlord and none on the tenants. The payment into court of rent by the tenants on the very morning the judgments of eviction were to be signed is not deemed to be good cause to vacate the warrants, pursuant to RPAPL 749 (subd 3), without conditions. ¶ It is plain that the tenants could have paid the rent all along but were withholding it as a technical maneuver while they were pursuing the Federal court actions held by those courts to be frivolous. ¶ The statutory stay pursuant to RPAPL 751 is not applicable. The failure to pay was a failure to comply with a court direction to do so. The warrants issued pursuant to Appellate Term direction. At a minimum, compliance with that direction is requisite as a condition to any relief to the tenants. It is notable that in all of the cases relied on by the Civil Court and the Appellate Term as authority for staying the execution of warrants of eviction, on the basis of postwarrant legislation, rent for use and occupancy continued to be paid during the course of the litigation. No reason appears why less should be required here. The order appealed from would impose the entire burden on the landlord and practically vitiate any liability of the tenants to pay rent for use and occupancy for the years since 1979. ¶ The majority opinion likewise does not resolve the issue of liability for rent for such years. Nor does it rule on whether these premises are subject to the Loft Law. The premises are plainly lofts utilized for dwelling purposes. If anything is clear in the tangled history of these proceedings, it is the fact that such illegal use was intended and recognized by both landlord and tenants. If such use is to continue, it must be in conformity with the Loft Law, whether with respect to these tenants or any others. Remand to the Civil Court with a direction for proceedings before the Loft Board, subject to the conditions here set forth, would invoke a procedure for legalization of the premises for such use in conformity with the legislative purpose (Multiple Dwelling Law, §§ 280, 282).

Kassal, J. (dissenting). I join in the dissent by Justice Fein except with respect to the direction for the payment of past, current and future rents. In view of the lengthy history of nonpayment of rents, the landlord is entitled to

have all arrears paid and the tenants should be directed to pay current use and occupancy directly to the landlord at the rate currently provided for as rent on each rental due date. This should continue until further order of the court or the Loft Board and would afford necessary and fair protection to both parties. (See *Pilgreen v 91 Fifth Ave. Corp.,* 91 AD2d 565; *Haddad Corp. v Redmond Studio,* 102 AD2d 730.)