OPINION OF THE COURT
Louis B. York, J.
Can a commercial tenant pursuant to a commercial lease successfully withhold his rent because the certificate of occupancy requires that the premises shall be used for residential purposes? For the reasons stated infra, I find against the tenant on this issue and the related issues of damages raised by it.
*690 This is a combined holdover and nonpayment action, both of which are based on the tenant’s rent arrears. The nonpayment petition, based on a lease which was negotiated with the respondent by the petitioner’s predecessor in title, alleges base rent from September 1990 through November 1990 in the sum of $2,500. The holdover petition alleges termination of the tenancy as a result of the failure to pay rent in accordance with a schedule that was not attached to the petition and was not introduced into evidence. Because the holdover petition fails to set forth the facts on which it is based I dismiss it. (Chinatown Apts. v Chu Cho Lam, 51 NY2d 786 [1980].) I will proceed to make a determination regarding the nonpayment proceeding.
During trial the fifth and sixth counterclaims in the holdover answer stating damages for emotional and mental distress were severed. The rest of the counterclaims survive even though the petition was dismissed since respondent did not discontinue them. In the nonpayment answer the second counterclaim seeking sanctions against petitioner for renting him premises without the appropriate certification of occupancy was dismissed during trial.
The petitioner made out a prima facie case for the rent. The petitioner showed that under the lease respondent failed to pay the base rent of $2,500 for 19 months, amounting to an arrears of $47,500. Demand was made for this sum and when payment was not forthcoming, a summary proceeding was commenced. Respondent contends in defense that the landlord cannot enforce an essentially illegal contract. He affirmatively seeks damages in the form of expenses incurred in preparing the space for the intended use, loss of rents he would have received from subletting portions of the premises, rent paid to the landlord and the security deposit held by the landlord.
Petitioner established at trial that he acquired his rights under the lease with respondent from petitioner’s predecessor in title. The lease states that the premises can only be used for the practice of the tenant’s business and may not be used for residential purposes.
Respondent moved into the building and began to improve the premises through the installation of an intercom system at an expense of $414.49, the resurfacing of floors and ceiling, the construction of new furniture, and installation of new fixtures, which cost respondent a total of $4,824,28.
A violation was issued to petitioner by the Environmental *691 Control Board for allowing the respondent’s premises to be used for the conduct of a commercial business contrary to the certificate of occupancy. The certificate of occupancy does designate the premises as a residential space.
When respondent determined that the use of this space violated the certificate of occupancy, he stopped paying rent. He also ceased trying to sublet the space; indeed, he never sublet any portion of the space. He did not turn in the keys to petitioner, nor did he vacate the premises. Luis Falcon from the Department of City Planning testified for the petitioner in an attempt to show that the property is located in a residential zoning district. Testifying from a zoning map, upon specific questioning from both the respondent and petitioner, and then the court, Mr. Falcon was not able to say for certain whether the building was in a residential or commercial zoning district. Neither is it feasible without the assistance of an expert witness to compare the deed to the zoning map and to determine that these premises are in a residential zoning district as respondent suggests in his posttrial brief. The attempt to prove that the premises are in a residential zoning district failed.
Respondent also rented space on the ground floor of the building and succeeded in subletting three apartments in that space at an average rental of approximately $1,100 per month. Using these sublets as a basis for estimating lost income, he claims reimbursement for the five potential offices in the current space in that amount from the time he moved in, the sums he expended in preparing the premises, the return of the rent paid to the landlord as well as a $2,500 security deposit paid to the landlord.
Section 301 (1) of the Multiple Dwelling Law requires that a multiple dwelling may not be occupied until a certificate of occupancy is issued. "No multiple dwelling shall be occupied in whole or in part until the issuance of a certificate * * * that said dwelling conforms in all respects to. the requirements of this chapter”.
Section 302 (1) (b) of that same law provides that no action or proceeding for rent shall lie during the time section 301 is violated: "No rent shall be recovered by the owner of such premises for such period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent.”
The purpose of these laws is to ensure the health and safety *692 of residents of multiple dwellings. (L 1929, ch 713; Washington Sq. Professional Bldg. v Leader, 68 Misc 2d 72 [Civ Ct, NY County 1971].)
Application of the statute has resulted in the landlord’s inability to collect the rent from residential tenants in the absence of a certificate of occupancy. (Lipkis v Pikus, 96 Misc 2d 581 [Civ Ct, NY County 1978], affd 99 Misc 2d 518, affd 72 AD2d 697, appeal dismissed 51 NY2d 874.)
Despite the rule that the absence of a certificate of occupancy will bar collection of the rent, because Multiple Dwelling Law § 302 is in derogation of the common law, the courts have construed the statute very strictly. (Coulston v Teliscope Prods., 85 Misc 2d 339 [App Term, 1st Dept 1975].) This strict construction has resulted in the courts’ requiring tenants to pay the rent in most instances whenever a certificate of occupancy exists even if the use challenged is not in conformity with it. Application of this principle has resulted in a court’s requiring a residential tenant to pay the rent where other parts of the premises were unlawfully converted to commercial use but the residential tenant suffered no injury. (Washington Sq. Professional Bldg. v Leader, 68 Misc 2d 72 [Civ Ct, NY County 1971], supra.) The same applies where in violation of the certificate of occupancy requirement that the premises be used for commercial purposes, the tenant used it for residential purposes. Although the court referred to this as volitional illegality, it once again illustrates the strict construction of the statute by the court. (Hornfeld v Gaare, 130 AD2d 398 [1st Dept 1987].) Neither the litigants nor the court have been able to point to any reported case in this jurisdiction in which a commercial tenant successfully withheld the rent because the premises had a certificate of occupancy for residential purposes. In Silver v Moe’s Pizza (121 AD2d 376 [2d Dept 1986]), the court squarely held that the absence of a certificate of occupancy does not relieve the tenant of its fundamental obligation to pay the rent in accordance with its commercial lease. The unspoken rationale was obviously the dual criteria (in considering whether a residential tenancy was involved and the strict constructionist approach to interpreting Multiple Dwelling Law § 302). If, as in Silver, the absence of a certificate of occupancy did not absolve the tenant of his obligation to pay the rent, certainly, then, in the instant case the presence of a certificate of occupancy (even though it is the wrong one) cannot absolve the tenant from his obligation to pay the rent.
*693 Since the absence of the correct certificate of occupancy will not absolve the tenant of his obligation to pay the rent, for the same reasons I dismiss all of the surviving counterclaims of respondent. Certainly, the respondent cannot recover on any of these claims as a general matter. It cannot recover the rent that has been paid because it has been shown that it was obligated to pay that rent. It cannot recover on the improvements it has made to the premises because, absent an express agreement, petitioner has no obligation to make repairs to the leased premises. (Bomrad v Van Curler Trucking Corp., 109 AD2d 1067 [4th Dept 1985].) Its claim for the security deposit will not become ripe until it leaves the premises and is therefore denied.
Judgment for possession shall be entered for petitioner in the sum of $47,500 with a five-day stay.